Ruth MITCHELL, Plaintiff-Respondent,

v.

FARMERS INSURANCE EXCHANGE,
Defendant-Appellant,

and

Farmers Underwriters Association, Attorney-In-Fact for Farmers Insurance Exchange, and Derrel M. Kontz, Defendants.

No. 51304.

Supreme Court of Missouri,
Division No. 1.

Dec. 13, 1965.

David G. Dempsey, Eaker, Dempsey & Dempsey, Clayton, for plaintiff-respondent.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, Clayton, for defendant, Farmers Ins. Exchange.

WELBORN, Commissioner.

This is a proceeding by which plaintiff-respondent Ruth Mitchell sought to apply the indemnity provisions of an automobile liability insurance policy to the payment of a $25,000 judgment obtained by her against Derrel Kontz for the death of her husband in an automobile accident. The action was brought against Farmers Insurance Exchange (hereinafter referred to as "Farmers"), its attorney in fact, Farmers Underwriters Association, and Kontz, the alleged insured of Farmers. Farmers defended on the grounds that the policy of insurance upon which its asserted liability was based was not in effect on the date of the accident. It also contended that the judgment against Kontz was obtained by the fraud and collusion of plaintiff Mitchell and defendant Kontz. The trial court found against Farmers on both issues and rendered judgment for plaintiff against Farmers Insurance Exchange for $28,908.33. This appeal followed.

Farmers issued to Derrel Kontz its automobile liability insurance policy for a period effective November 3, 1960 to May 3, 1961. Bodily injury liability coverage was in the amount of $25,000 for each person and $50,000 for each occurrence. Comprehensive and collision coverage were also provided for Kontz's 1956 Pontiac automobile.

Approximately 25 days prior to May 3, 1961, a renewal notice was sent to Kontz from Farmers' home office in Los Angeles, notifying him that continuance of the insurance in effect after May 3, 1961 required payment of a further premium. The renewal premium was not paid prior to May 3, 1961, and, on May 10, Farmers' regional office in Mission, Kansas, mailed to Kontz an "Avoid Lapse" notice, containing the following statement:

"Although the due date of your premium has passed, you can still prevent cancellation. Payment within 15 days of due date will renew your policy without interruption of coverage, otherwise coverage stops at due date."

This notice was received by Kontz and on May 17, 1961, his wife drew a check on their joint bank account in the St. John's Community Bank, payable to Farmers for $28.71. Mrs. Kontz testified that, although she actually drew the check on May 17, she dated it May 18. She testified that she placed the check and a copy of the "Avoid Lapse" notice in an envelope addressed to Farmers at Mission, Kansas. She testified that she gave the letter to her ward, Kathleen Marlen, then thirteen years of age, at around 9:00 p. m. on the evening of May 17 and directed her to take it to a mailbox in the vicinity of St. Ann. Kathleen testified that she deposited the letter in the box at the corner of Adie and St. Charles Rock Road at around 8:30 or 9:00 o'clock that evening.

There was evidence that, if the Kontz letter had followed the usual course, it would have been received at the Mission post office by 9:00 a. m., Friday, May 19. Farmers picks up its mail at the Mission post office twice daily, before 7:30 a. m. and before noon, Monday through Friday.

Early in the morning of Saturday, May 20, Kontz and a fellow-employee at Wagner Electric, George Edward Mitchell, left on a fishing trip in Kontz's Pontiac. At approximately 1:30 a. m., the vehicle, with the two men in it, ran off Highway 21 in St. Louis County and overturned. Mitchell was thrown beneath the vehicle and died at the scene from injuries which he sustained. Kontz, seriously injured, was taken to St. Louis County Hospital.

On Monday, May 22, the Mail Department of Farmers at Mission opened the letter from Mrs. Kontz and forwarded the Kontz check and "Avoid Lapse" notice to the Cash Receipts Department, which stamped the check to show its receipt on May 22. The check was deposited by Farmers in the Commerce Trust Company in Kansas City on May 23, and the Cash Receipts Department of Farmers stamped the "Avoid Lapse" notice which had been returned to it "PAID" on that date. In accordance with Farmers' practice, no notice of receipt of the premium or of extension of the period of coverage was sent Kontz.

On June 6, 1961, the St. Louis Branch Claims Office of Farmers received verbal notice of the May 20th accident. An accident report form was mailed by a Farmers' agent to Kontz on June 6 and it was filled in and returned to Farmers by mail on June 15. Also on June 6, the St. Louis Branch Claims Office addressed a "COVERAGE CONFIRMATION ADVICE" to Farmers' Mission office. The document described Kontz as the insured, gave the policy number, the coverage and loss date of "5–20–61." When this inquiry reached Mission, the records there were examined and a clerk in the office, M. Cady, signed the document, indicating "COVERAGE & STATUS O.K. FOR THIS DATE OF LOSS."

On June 8, 1961, a Farmers' claim representative made an offer to Kontz to settle the property damage loss for $500, net. On June 23, the St. Louis Claims representative wrote Kontz, confirming the verbal offer of June 8 to settle the property damage claim.

On the same date, the Underwriting Department of Farmers in Mission, upon review of its file on Kontz's policy, concluded that the insurance policy was not properly in effect on May 20, and concluded that it should be reinstated, effective May 23. On June 26, an endorsement to such effect was mailed Kontz from Mission.

On June 29, 1961, the St. Louis Claims Office issued a draft for $500 payable to Kontz and a financing agency. However, Mission refused the draft on the grounds that the claim was not covered. Refusal of the draft was the first knowledge that the St. Louis Claims Office had of the coverage question.

In October, 1961, Mrs. Mitchell filed her petition against Kontz for damages for wrongful death of her husband in the St. Louis County Circuit Court. A copy of the petition and the summons served on Kontz were sent by Kontz's attorney to Farmers. On November 2, 1961, the Farmers' St. Louis Branch Claims Manager returned the suit papers, stating: "The policy which Mr. Kontz carried with this Exchange was not in force when this accident occurred, * * *."

On April 24, 1962, default judgment was entered against Kontz and in favor of Mrs. Mitchell for $25,000. This action followed.

After the trial, the court below made findings of fact and conclusions of law. The court found that the policy was in effect on May 20, 1961, and that Farmers was bound by the judgment in the action against Kontz on the issue of who was driving the automobile at the time of the accident.

On this appeal, appellant contends that the policy was not in effect on May 20; that by its terms it applied for a six months' term, from November 3, 1960 to May 3, 1961, at 12:01 a. m., standard time, and for additional terms of six calendar months for

which the required premium is paid; that the "Avoid Lapse" notice extended the time for payment for only 15 days from the due date; that the evidence failed to prove that the payment had been placed in the mail prior to the due date; that, in any event, the payment had not been received by Farmers prior to such date, and therefore, the policy, by its terms, had lapsed for nonpayment, when, according to appellant, payment was actually received on May 22.

Farmers' argument overlooks the inescapable conclusion that, regardless of the time limits fixed by the policy and by the "Avoid Lapse" notice, and regardless of whether, by Farmers' practice, deposit of premium in the post office was not considered payment, all such requirements were waived by Farmers. There can be no question that, when Farmers' Mission office opened Mrs. Kontz's letter on May 22, personnel who handled the payment were aware that more than 15 days had elapsed since May 3, the due date of the premium, as shown by the accompanying "Avoid Lapse" notice. Despite that fact, Farmers treated the payment as a routine renewal. The check was accepted and deposited to Farmers' account. The "Avoid Lapse" notice was marked "PAID" and Kontz's policy record continued in the active policy files of the company. The policy itself did not expressly require renewal premiums to be paid prior to the renewal term. Its language specified an original term "and additional terms of six calendar months each for which the required premium is paid." Compare with language found in the policy involved in M. F. A. Mutual Ins. Co. v. Quinn, Mo.App., 259 S.W.2d 854. Even if other provisions of the policy here in question could be considered as imposing a requirement of payment in advance of the renewal term, the "Avoid Lapse" notice waived any such requirement and offered to extend the payment period 15 days beyond the expiration date.

Farmers, having specified the payment terms, could waive its requirements.

M. F. A. Mutual Ins. Co. v. Quinn, Mo.App., 259 S.W.2d 854, 859 [5–8]. Here the facts bespeak waiver in such unequivocal terms that we need not concern ourselves with the question of whether or not, by its ordinary practices, Farmers considers the time of mailing or the time of its receipt as payment. There was some conflict in the evidence in this regard. Of interest in this connection was an acknowledged practice on the part of Farmers to retain remittance envelopes for a period of 90 days. Here, although the coverage question arose within the 90-day period, no effort appears to have been made to examine and preserve the envelope received from Mrs. Kontz. In any event, Farmers did not choose to reject the payment either because it had not been mailed (if such was the case) before May 18, or because it had not been received before that date. Having raised no objection to payment by personal check, having deposited the check to its account and the check having been duly paid by the bank upon which it was drawn, Farmers is in no position to urge that there was no payment until the check had actually been paid. We need not concern ourselves with what the effect of nonpayment or merely holding the check might have been. That is not the situation here and cases cited by Farmers, dealing with such situations, have no application here.

Basically, the question here is what, if any, effect upon Farmers' waiver may be accorded the fact that the occurrence of the accident out of which the asserted liability arises happened prior to Farmers' waiver and that Farmers' action was taken without knowledge of the accident. The evidence is clear as to what Farmers' practice was in a case such as this. Whether or not the practice has a justifiable legal basis is the problem.

The evidence showed that, although Farmers sent out 15-day "Avoid Lapse" notices, it actually took no action to terminate policies until approximately 25 days after the end of the policy term. At that time, a "Final Lapse" notice was sent to the

policyholder. After the "Final Lapse" notice, payment required reinstatement of the policy. However, if payment was received before the "Final Lapse" notice was sent, whether within the 15-day grace period or thereafter, the payment was accepted and the policy extended for the specified term from its former expiration date.

To this practice there was a significant exception which Farmers would apply here: If there had been a loss between the expiration of the 15-day grace period and the receipt of premium, prior to the "Final Lapse" notice, the policy was reinstated as of the date of payment of the premium. However, there was no evidence that such position was communicated to Farmers' policyholders. In fact, the position was not well-communicated to Farmers' employees, at least not to M. Cady who issued the June 6th coverage confirmation. Farmers introduced as an exhibit a volume entitled "Farmers and Mid-Century, Volume I." According to Farmers, this book was used for educational training of employees and in rendering service to customers. "The volume also contains a formulation of the company's policy regarding renewals and sending of notices." Farmers points to a paragraph of the manual which states: "If the payment of the renewal premium is not received by approximately the ninth day after the renewal date, a reminder notice is sent to the insured. Although the notice grants an extension to the fifteenth day beyond the renewal date, it is contingent upon the payment being received during that period. If the payment is not received, the policy lapses as of the renewal date."

However, Farmers points to nothing in the manual which states the policy or practice that is here invoked. On the next page beyond the paragraph quoted by Farmers, the following appears: "If, 25 days after the premium due or renewal date, the insured has not paid his premium, the policy is considered lapsed as of the renewal date." Insofar as has been pointed out or as we have been able to discover, the manual is silent as to the situation between the 15th and 25th days.

◼    Having accepted the premium beyond the 15-day grace period, Farmers might well have been prohibited from imposing a communicated condition upon the payment. See Andrus v. Fidelity Mutual Life Ins. Ass'n, 168 Mo. 151, 67 S.W. 582; Donnegan v. Court of Honor, Mo.App., 251 S.W. 165. Clearly, however, it could not impose an uncommunicated condition upon the acceptance of the payment. As stated in Equitable Life Assurance Society v. Brewer, 225 Ky. 472, 475, 9 S.W.2d 206, 207: "When the payment of the premium was tendered after the grace period had expired, the company was not required to accept it; but, when the company did accept it, it was incumbent on it to bring home to the insured any conditions it desired to impose. The company could not take the money of the assured as a payment of the premium, retain and use it, and at the same deny that payment was made." See also Shea v. Massachusetts Benefit Ass'n, 160 Mass. 289, 35 N.E. 855, 39 Am.St.Rep. 475; McDonald v. Equitable Life Assurance Society, 185 Iowa 1008, 169 N.W. 352.

We need not concern ourselves with what the situation might be had the renewal been attempted by the insured or one in his behalf, with knowledge of a loss which was withheld from the insurer. Here the trial court believed Mrs. Kontz and her ward when they testified that the premium payment had been deposited in the mail on May 17. The trial court was in a better position than we to pass upon the credibility of these witnesses. We find no reason to disagree with his conclusion. Evidence that, had the letter been mailed on May 17, it might have reached Farmers and been processed on Friday, May 19, does not disprove the witnesses' testimony. The vagaries of the mail are such that a delay of approximately 3½ hours in the usual handling time which would have caused the letter not to be opened until Monday is neither impossible nor improbable. We

would not on a contrary assumption reject the trial court's finding on the definite oral testimony which he heard.

This is not a case of creation of new rights, as appellant argues, which did not exist at the time of a purported waiver or estoppel. The policy of insurance was a continuing policy. As above pointed out, our courts have consistently held that conditions for payment of premium may be waived by the insurer, as was done in this case. The cases cited by appellant (Linenschmidt v. Continental Casualty Co., 356 Mo. 914, 204 S.W.2d 295, Rosenberg v. General Accident Fire & Life Assurance Co., Ltd., Mo. App., 246 S.W. 1009, Simpson v. American Automobile Ins. Co., Mo.App., 327 S.W.2d 519, and Graham v. Gardner, Mo.App., 233 S.W.2d 797) involved an attempt to establish liability against the insurer by waiver or estoppel arising out of a matter other than delayed premium payment.

The cases relied upon by appellant, as authority for the proposition that the non-payment of the premium ipso facto worked a forfeiture, are not here applicable. In those cases (Kazee v. Kansas City Life Ins. Co., Mo.App., 217 S.W. 339, Ashbrook v. Phoenix Mutual Life Ins. Co., 94 Mo. 72, 6 S.W. 462, White v. Metropolitan Life Ins. Co., Mo.App., 218 S.W.2d 795, and Rocci v. Massachusetts Accident Co., 222 Mass. 336, 110 N.E. 972), there was no payment of premium and the question of waiver was not involved.

Appellant also contends that to extend coverage to Kontz in this situation would constitute discrimination against its other policyholders, in violation of § 379.470(1), RSMo 1959, V.A.M.S. According to appellant, "Under this section, if defendant extended coverage to Derrel M. Kontz for an accident that took place more than seventeen days after the policy 'lapsed' according to its terms, Farmers Insurance Exchange would then be unfairly discriminating against its other policyholders who were not given free coverage for any period after the expiration date of their policies."

However, there is no contention that Kontz was entitled to free coverage until May 20. Plaintiff's position is that the policy was in effect from May 3 to November 3 and there is no suggestion otherwise.

Appellant further contends that there can be no waiver or estoppel if the insurer was ignorant of the facts, citing Booker v. Motors Ins. Corp., Mo.App., 228 S.W.2d 694, Hood v. M. F. A. Mutual Ins. Co., Mo. App., 379 S.W.2d 806, and 45 C.J.S. Insurance § 714, p. 688. Those authorities hold that waiver cannot arise by conduct of an insurer who is ignorant of the facts upon which the right to forfeiture is based. Here there is no question that appellant had full knowledge of the time of receipt of the Kontz premium and elected to accept it, nevertheless.

■ Farmers, having accepted the premium payment when it was received, the policy was thereby extended from its expiration date on May 3, and was in effect on the date of the accident.

On the issue of fraud and collusion, the trial court held that Farmers may not collaterally attack the judgment obtained by Mrs. Mitchell against Kontz and that Farmers is bound by the outcome of that litigation on who was driving the insured vehicle at the time of the accident. On the appeal, appellant asserts that the judgment was the product of fraud and collusion and, therefore, the trial court should have permitted relitigation of the facts of the accident.

■ While the trial court's conclusion that the insurer may not collaterally attack the judgment against its insured is generally correct (Soukup v. Employers' Liability Assur. Corp., 341 Mo. 614, 108 S.W.2d 86, 88 [1, 2], 112 A.L.R. 149), there is a generally recognized exception to the rule which permits an insurer to avoid the effect of a judgment which is the result of fraud and collusion between the insured and the injured party. State Farm Mutual Automobile Ins. Co. v. Shelton, Ky., 368

S.W.2d 734; 46 C.J.S. Insurance § 1251, p. 259.

The trial court, in accordance with Civil Rule 73.01, V.A.M.R., permitted appellant to incorporate into the record by way of offer of proof the evidence relied upon in order to prove its charge of fraud and collusion. Appellant summarizes such evidence as follows (parenthetical comment ours):

"(1) Ruth Mitchell spoke to the insured on several occasions after the accident." (The evidence was that Mrs. Mitchell spoke to Kontz twice, once while he was still in the hospital and once when she went to the Kontz residence to pick up her husband's personal belongings.)

"(2) Ruth Mitchell was not permitted by the Trial Court to answer whether she was advised that the St. Louis County Police Report and the Coroner's Report indicated that her husband was driving the Kontz car at the time of the accident." (The objection was sustained on the grounds that the question called for the rankest kind of hearsay. Appellant does not question the ruling nor does it contend that if Mrs. Mitchell had been permitted to answer, her answer would have been in the affirmative.)

"(3) Nancy Kontz spoke to Mr. Richard Jacobsmeyer, her personal attorney, on the date of the accident." (Mrs. Kontz stated that, the morning following the accident on Saturday morning, she talked to Mr. Jacobsmeyer, who was her attorney before the accident. Her statement was: "Then it was only if he could see him or not, or to keep people from going up there." Just what inference Farmers would draw from a conversation between Mrs. Kontz and her attorney is not clear.)

"(4) In the transcript of the Coroner's proceedings, which was read into evidence under an offer of proof, it was stated that the Deputy Coroner in a conference with Derrel M. Kontz was advised that at the time of the accident, the decedent, George E. Mitchell, was driving the automobile and that the insured, Derrel M. Kontz, was a passenger." (The coroner's report indicates that Deputy Coroner Kauffmann spoke to Kontz upon arrival at the hospital at 2:28 a. m., following the accident; that Kontz had a blood alcohol content of 0.16% and was incoherent and did say that his "buddy Mitch" was driving the car. The police officer who investigated the accident was unable to obtain a statement from Kontz because of his pain. The deputy coroner returned the afternoon following the accident, but Kontz was unable to talk. On Monday, May 22, Kontz told him "I imagine I was driving the car.")

"(5) The St. Louis County Police Report in an offer of proof indicated from the physical facts of the accident as well as the information on the report itself that the driver of the vehicle was the deceased, George E. Mitchell." (The police report concluded that Mitchell was the driver. The conclusion was based upon the fact that Kontz was found inside the car, on the passenger side, with his legs pinned between the dashboard and the front seat and that Mitchell was pinned beneath the car on the driver's side. The car had left the highway at a high rate of speed, traveled 222 feet in a drainage ditch, struck a culvert and flipped over twice. The violence of the vehicle's travel would cast doubt upon a conclusion as to who was driving it, based upon the position of the passengers at the end of the vehicle's course.)

"(6) In the default judgment that was entered against Derrel M. Kontz, he was not subpoenaed to appear in court and excerpts from a deposition of Derrel M. Kontz were read into evidence. Evidence that was readily available was not introduced which would shed light on whether or not Kontz was the driver of this vehicle at the time of the accident. No questions were asked of Patrolman Gene Nelson in this default judgment proceeding as to the positions of the deceased and Derrel M. Kontz when he found them after the accident or the movements of the car up to

the point where he found the vehicle as evidenced by ruts and skidmarks. Of course, he was not asked who was the driver of the vehicle." (We know of no rule or practice that called for the subpoenaing of the defaulting defendant as a witness. The trial judge at the default proceedings did question the investigating patrolman about the positions of Mitchell and Kontz following the accident, and developed the information referred to in (5) above.)

"(7) Derrel M. Kontz, in his report to the Farmers Insurance Exchange, stated he was uncertain who was driving his vehicle at the time of the accident. (8) In the report to the Safety Responsibility Unit of the State of Missouri, Derrel M. Kontz stated he was uncertain as to who was driving his vehicle at the time of the accident and he added on this report, 'I don't know if I was driving the machine or my buddy.' In another deposition, he did not know who was driving at the moment of the accident." (Kontz did make such statements, which were inconsistent with the purported statement which he made to the coroner. However, except for the statement to the coroner, Kontz's statement was that the last thing he remembered prior to the accident was that he was driving, but that he did not remember the accident.)

Considering, on our de novo review on this appeal, that the evidence which appellant points to as establishing fraud and collusion was admissible, we think that it clearly fails to rise to the level of clear, cogent and convincing proof of Farmers' defense of fraud and collusion. Kontz did make inconsistent statements as to who was driving the car. If it were a fact that he was driving, proof of Mrs. Mitchell's awareness of such fact at the best amounts to no more than speculation and suspicion. Farmers elected not to defend the original action. If it is to avoid liability now, the burden of proof of its allegations of fraud and collusion is on it and it has failed to carry such burden.

The judgment is affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.