James **GRASSHAM**, Respondent,

v.

**FARM BUREAU TOWN AND COUNTRY INSURANCE COMPANY OF MISSOURI, Appellant.**

No. 13626.

Missouri Court of Appeals,
Southern District,
Division Three.

Dec. 20, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 11, 1985.

Application to Transfer Denied
Feb. 26, 1985.

R.L. Veit, Robert J. Swift, Jr., Carson, Monaco, Coil, Riley & McMillin, P.C., Jefferson City, for appellant.

L. Dwayne Hackworth, Randy P. Schuller, Hackworth & Schuller, Piedmont, for respondent.

CROW, Presiding Judge.

This is a suit by James Grassham ("plaintiff") against Farm Bureau Town and Country Insurance Company of Missouri ("defendant") on a fire insurance policy. The trial court, hearing the cause without a jury, entered judgment for plaintiff for $15,000, the policy limit. Defendant appeals. The sole issue is whether the policy was in force at the time of the loss.

The policy, which insured a frame structure described as a "vacation-type cabin" near Clearwater Lake in Reynolds County, was issued for a term of one year, bearing an inception date of "11–23–79" and an expiration date of "11–23–80." It said:

"The term of this policy shall be from 12:01 A.M. on the effective date to 12:01 A.M. on the expiration date, Standard Time, and for such terms of 12 calendar months each thereafter as the required renewal premium is paid on or before expiration of the current term and accepted by the Company."

Plaintiff paid the initial premium, $110, by check dated January 14, 1980.

Plaintiff renewed the policy for another one-year term by a check in the same amount dated November 18, 1980.

Harold Smith, defendant's "service supervisor," testified that a computer sends a renewal notice to defendant's policyholders approximately 21 days before their policies are scheduled to expire. According to Smith, such a notice was sent to plaintiff about November 1 or 2, 1981.[1] No copy of the notice was produced by either party, but Smith testified the notice was "exactly the same" as one shown him at trial. That one said, in pertinent part: "This is the only notice you will receive. Policy will be cancelled on above due date if premium not received on or before due date."

Plaintiff's bookkeeper admitted receiving such a notice, explaining that the notice prompted him to write a check for the $110 annual premium on November 25, 1981. The bookkeeper mailed the check to defendant's "home office" at Jefferson City the same day. Smith testified that defendant received the check November 28, 1981. It was deposited in defendant's bank account.

On November 29, 1981, plaintiff's daughter-in-law received a phone call from the owner of a cabin situated next to plaintiff's. The caller was attempting to find plaintiff, to tell plaintiff that plaintiff's cabin—along with the one owned by the caller—had burned.

Plaintiff's daughter-in-law relayed the news to plaintiff's bookkeeper, who then called plaintiff and notified him. Plaintiff thereupon notified defendant's agent in Van Buren that same day (November 29).

Records of the Missouri Department of Conservation reveal that its Piedmont for-

---

1. We take judicial notice that November 1, 1981, was a Sunday, so we assume the notice was not sent that day.

estry office was notified of the fire by telephone at 3:18 p.m., November 24, 1981. The call was evidently made by a squirrel hunter.

Ron Keith, a "forestry aide," was dispatched to the scene, arriving at 3:31 p.m. He saw the two cabins "were completely burned down to the foundation, completely gone." The fires were still burning, with flames "maybe about four feet high." A woods fire, which had burned approximately one acre, was extinguished by Keith.

There was no testimony as to when the fire started, but the cabins were along a gravel road traveled by "between six and a dozen cars a day," and no one had reported a fire in that vicinity to the Department on November 22 or 23.

The record is silent as to why plaintiff was not notified of the fire until five days after its discovery.

On December 11, 1981, defendant's regional claims supervisor wrote plaintiff a letter, the heading of which stated:

"EXPIRATION OF POLICY:     11/23/81
DATE OF LOSS:              11/24/81"

The letter read:

"This is to inform you of the expiration of your property policy, G56 542, for non-payment of premium.

This Company cannot afford any coverage under this policy for the loss which occurred on November 24, 1981, due to the policy having lapsed because of non-payment of premium.

We regret this action, but feel confident you can understand the position we must take."

Defendant, however, kept all of the premium paid by the check of November 25, 1981. In explanation, Smith, defendant's service supervisor, testified that although the computer showed that plaintiff's policy had lapsed November 23, 1981, because of nonpayment of premium, the computer "status sheet" showed that defendant "had

reissued and started coverage on 11–28–81 for another period of a year from that date," said coverage being identified by the same policy number as the lapsed policy. According to Smith, defendant would have sent plaintiff a receipt saying that defendant had received the premium on November 28, 1981, and the "policy period" would be from November 28, 1981, to November 28, 1982. Defendant, however, produced no copy of such a receipt, and plaintiff denied receiving any such receipt.

Defendant's sole contention at trial, and here, is that plaintiff had no coverage on the cabin from 12:01 a.m., November 23, 1981, until November 28, 1981, and that the fire occurred during that interval. Defendant makes no claim that plaintiff caused the fire, nor does defendant assert that plaintiff knew the fire had occurred when the renewal check was sent November 25, 1981.

The trial court filed findings of fact and conclusions of law with its judgment, but made no finding as to when the fire began. In the trial court's view, that was unnecessary. The trial court concluded that plaintiff's policy was a continuing policy, with no provision by which coverage was suspended from the stated expiration date until receipt of the renewal premium. The trial court determined that defendant's acceptance of the late premium on November 28, 1981, indicated an intent by defendant to waive its right to insist on prompt payment. These circumstances, ruled the trial court, resulted in a renewal of the policy for a one-year term beginning at the expiration of the previous term. Consequently, there was no interruption in coverage and the policy was in force regardless of which day the fire started.

Expressed another way, the trial court's rationale, as we perceive it, is that *timely* payment of the stipulated premium would have, according to the renewal provision of the policy, automatically renewed coverage for a one-year term beginning at 12:01 a.m., November 23, 1981, and ending at

12:01 a.m., November 23, 1982. Defendant had the right, under the policy, to insist that the renewal premium be paid by the deadline established by the policy, and the concomitant right, of course, to reject a delinquent tender of premium and thereby avoid liability for any loss occurring after 12:01 a.m., November 23, 1981. That was a right that defendant could waive, however, and defendant did waive that right by accepting plaintiff's tender of the premium five days after it was due. Inasmuch as the premium necessary to renew coverage for a one-year term—beginning and ending on the dates specified in the policy—was tendered (albeit late) by plaintiff, and accepted by defendant when tendered, the policy was renewed for a one-year term beginning at 12:01 a.m., November 23, 1981. Consequently, the trial court found there was coverage irrespective of when plaintiff's cabin caught fire.

Defendant contends the trial court erred in finding that defendant waived its right to insist on timely payment of the premium, arguing that such finding is unsupported by substantial evidence and is contrary to Missouri Law. Defendant maintains that its acceptance of the check on November 28, 1981, "was not for the purpose of backdating coverage on the policy to the expiration date; rather it was to reinitiate coverage on the date the past-due premium was received for a period of one year from that date."

■ As this was a court-tried case, the scope of our review is established by *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

■ Insurance policies with renewal provisions similar to the one here have been held to be "continuing" policies. *Lake v. Farm Bureau Mutual Insurance Compa-*

*ny of Missouri,* 624 S.W.2d 28, 29[2] (Mo. App.1981); *M.F.A. Mutual Insurance Co. v. Quinn,* 259 S.W.2d 854, 859[5] (Mo.App. 1953). The policies in *Lake* and *Quinn,* as here, contained no provision by which the insurance was suspended from the expiration date until payment of premium. Absent such provision, payment of a premium, then past due, *and its acceptance by the insurance company,* is evidence of a waiver of the company's right to insist on prompt payment. *Lake,* 624 S.W.2d at 29; *Quinn,* 259 S.W.2d at 859[8].

An argument similar to defendant's was rejected in *Mitchell v. Farmers Insurance Exchange,* 396 S.W.2d 647 (Mo.1965). There, the deadline for payment of the renewal premium, as fixed by the policy and subsequently extended by an "avoid lapse" notice, was May 18, 1961. The evidence, viewed favorably to the policyholder, was that a check for the renewal was mailed May 17, 1961, and reached the company May 19. The incident that occasioned the loss (a motor vehicle accident) occurred May 20. The company stamped the check received as of May 22, unaware of the accident. Subsequently, on June 6, the company learned of the accident. On June 23, the company concluded that the policy was not in effect on May 20, and that it should be reinstated effective May 23. On June 26, an endorsement to that effect was mailed to the policyholder.

*Mitchell* held that regardless of the time limits fixed by the policy and the notice, and regardless of whether the act of mailing the check was considered payment, all such requirements were waived by the company. It was evident that when the company processed the check on May 22, its personnel were aware that the deadline for payment had passed. Despite that, the company treated the payment as a routine renewal. *Id.* at 650[1]. Having specified the payment terms, the company could waive those requirements. *Id.* at 650[2].

Pointing out that the policy was a continuing policy, the opinion stated that our

courts have consistently held that conditions for payment of premium may be waived by the insurer, and that the insurer had done so there. *Id.* at 652. Having accepted the delinquent premium, the company could not impose an uncommunicated condition, i.e., that coverage lapsed during the interval between the payment deadline and receipt of the check. *Id.* at 651[3]. The premium having been accepted by the company when received, the policy was thereby extended from its stated expiration date, and was in effect on the date of the accident. *Id.* at 652[5].

The principles of *Lake, Quinn* and *Mitchell* apply here. Defendant was not required to accept plaintiff's delinquent tender of the renewal premium. When plaintiff's check reached defendant's home office on November 28, 1981, defendant could have rejected it, in timely fashion, and escaped liability for any loss occurring after 12:01 a.m., November 23, 1981. Defendant had the option, however, of accepting the premium even though it arrived late. Having specified, in the policy, that renewal premiums be paid by a certain time, defendant was free to waive that requirement and accept renewal premiums tendered after the established deadline. Defendant undeniably accepted the late premium in the instant case, depositing plaintiff's check in defendant's bank account.

Acceptance of late renewal payments, under *Lake, Quinn* and *Mitchell*, is evidence of a waiver by an insurance company of its right to insist on timely payment. Defendant's acceptance of plaintiff's check in the instant case, therefore, supplied substantial evidence of a waiver by defendant of its right to receive the renewal premium on or before 12:01 a.m., November 23, 1981. We consequently reject defendant's argument that the trial court's finding that defendant waived its right to insist on timely payment of plaintiff's renewal premium is unsupported by substantial evidence or contrary to Missouri law.

The trial court was not obliged to accept Smith's explanation that defendant's acceptance of plaintiff's late premium was for the purpose of initiating new coverage for a one-year period beginning November 28, 1981. The term of each one-year renewal under plaintiff's continuing policy was from 12:01 a.m., November 23, to that same time on the ensuing November 23. Under *Mitchell,* 396 S.W.2d at 651[3], defendant, having accepted plaintiff's renewal premium, could not impose an uncommunicated change in the renewed one-year term of plaintiff's coverage.

We are mindful, of course, that Smith testified defendant would have sent plaintiff a receipt stating that the new "policy period" would be from November 28, 1981, to November 28, 1982. Plaintiff's evidence, however, was that no such receipt was ever received. Whether defendant did in fact notify plaintiff that the new one-year period began November 28, 1981, was a fact issue for the trial court to determine. Defendant requested "a finding of facts and conclusion of law" generally, but defendant requested no finding on that specific issue. The trial court's findings of fact included no finding on that issue. Accordingly, the finding on that issue is considered as having been made in accordance with the result reached. Rule 73.01(a)(2), Missouri Rules of Civil Procedure (14th ed. 1983).

In that connection, we observe that the letter of December 11, 1981, from defendant's regional claims supervisor to plaintiff, did not mention a new period of coverage beginning November 28, 1981. That letter, in blunt and certain prose, told plaintiff that his policy had expired November 23, 1981, and that the loss had occurred November 24. Coverage was denied "due to the policy having lapsed because of non-payment of premium."

By the time the letter was written, plaintiff's premium had, of course, been in defendant's hands for two weeks. The letter, however, wholly ignored plaintiff's pay-

ment of the premium and its acceptance by defendant. The explanation for keeping the premium which Smith offered two years later at trial[2] is nowhere found in the letter. The significance of that omission was obviously not lost on the trial court.

Defendant's reliance on *Stone v. M.F.A. Mutual Insurance Co.*, 663 S.W.2d 774 (Mo.App.1983), is misplaced. There, the insurer, in two separate written communications to the insured, made it plain that delinquent payment of a premium, if accepted by the insurer, would result in resumption of coverage effective the day the insurer received payment. Defendant produced no such communication in the instant case, and nothing in plaintiff's policy so provided.

The judgment is supported by substantial evidence, is not contrary to the weight of the evidence, and, in the respects referred to herein, neither erroneously declares nor erroneously applies the law.[3]

Judgment affirmed.

HOGAN, TITUS, FLANIGAN and MAUS, JJ., concur.

---

**2.** Trial occurred December 15, 1983.

**3.** The trial court set out an alternative theory that an ambiguity existed in the policy regarding the expiration date of the coverage, which ambiguity the trial court resolved in favor of

plaintiff. Inasmuch as we affirm the judgment on the basis set out in the opinion, we need not, and do not, comment on the trial court's alternative theory.