**David L. OTTE, Appellant/Cross–Respondent,**

v.

**LANGLEY'S LAWN CARE, INC., et al., Respondents,**

and

**Missouri State Treasurer, Custodian of the Second Injury Fund, Appellant/Additional Party.**

**No. ED 79091.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 13, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2001.

Application for Transfer Denied
Feb. 26, 2002.

Richard M. Marshall, Richard M. Marshall & Associates, P.C., Clayton, MO, for appellant.

David Korum, Jones, Korum, Waltrip, Jones & Doskocil, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Barbara L. Toepke, Asst. Atty. Gen., St. Louis, MO, for respondent.

Edward M. Vokoun, Evans & Dixon, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

David Otte (claimant) was paralyzed following an automobile accident on June 16, 1995. He filed a workers' compensation claim against his employer, Langley Lawn Care, Inc. (employer). The Administrative Law Judge (ALJ) found that the accident did not arise in or out of the course of claimant's employment and denied the claim. The Labor and Industrial Relations Commission (commission), one commissioner dissenting, reversed the ALJ's decision and found that the accident did arise in and out of the course of claimant's employment. The commission found employer liable for past medical expenses, future medical care, and temporary total and permanent partial disability benefits. The commission further found that employer allowed its workers' compensation insurance through Travelers Insurance Company (insurer) to lapse and that the Second Injury Fund (SIF), under section 287.220.5 RSMo (1994)[1], was liable for claimant's past and future medical expenses. Employer, claimant, and the SIF appeal. We affirm in part and dismiss in part.

The facts in the light most favorable to the award are as follows. Claimant began working as a laborer for employer three days prior to the accident. During the employment negotiations, Mr. Langley, president of employer, offered claimant a wage of $7.50 per hour although claimant was earning $8.00 per hour at his then current job. Claimant testified that he discussed the difference with Mr. Langley and to compensate for the difference between the wages claimant could ride with his brother, who also was employed by employer, in a truck loaned to the brother by Mr. Langley. The truck was owned personally by Mr. Langley but the truck had signs on it that advertised employer, employer paid for the vehicle's maintenance and insurance, and the truck was used occasionally by employer at work sites and to carry tools and equipment of employer.

On June 16, the brothers finished their work for the day but delayed leaving until they had received their paychecks. On their way home, in the truck loaned by Mr. Langley, the brothers were in an accident. Claimant was paralyzed from the waist down.

There was also a dispute concerning whether employer had workers' compensation insurance at the time of the accident.

---

1. All further statutory citations are to RSMo 1994 unless otherwise indicated

Insurer had provided workers' compensation insurance for employer since 1991 under a series of annual policies, which renewed on June 3 each year. On March 23, 1995, insurer sent employer a notice that the policy expiration date was June 3, 1995 and a quotation showing an estimated renewal premium of $5,300 and that a renewal payment of $3,976 was due by June 2, 1995. The premium amount was based on payroll classification information and was approximately seventy-five percent of the annual premium.

The notice stated:

- IN ORDER TO AVOID A LAPSE IN COVERAGE, YOUR RENEWAL PAYMENT MUST BE RECEIVED BY THE DUE DATE SHOWN ABOVE. DEPENDING ON THE PLAN REQUIREMENTS, IF PAYMENT IS NOT RECEIVED BY THE DUE DATE, EITHER THE POLICY WILL BE ISSUED WITH A LAPSE IN COVERAGE OR YOUR PREMIUM CHECK WILL BE RETURNED AND NO POLICY WILL BE ISSUED.

The premium was not paid by the June 2, 1995 due date. Employer issued a check dated June 15 which was mailed in an envelope with a postage meter date and taken to a post office where the postage meter date was cancelled with a postal mark date stamp. The parties disputed whether the date of mailing was June 15 or 16. The commission found that the envelope was mailed June 16. The check was received by insurer on June 20 and on June 22, insurer issued a renewal policy effective June 17, 1995. Insurer received notice of claimant's accident on September 13, 1995.

Claimant filed a claim against employer for workers' compensation, stating that the accident arose in and out of the course of employment. The ALJ found that the ac-cident did not arise in and out of claimant's employment but was reversed on review by the commission. The commission found that the accident arose in the course of claimant's employment, that employer did not have workers' compensation insurance at the time of the accident, and that as a guarantor of an uninsured employer, the SIF is liable for claimant's past and future medical expenses.

We first consider two jurisdictional questions. First, insurer asserts that claimant's appeal is untimely and this court therefore has no jurisdiction over claimant's appeal. The final award of the commission was dated January 5, 2001. Claimant filed his appeal on February 12, 2001, more than thirty days after the date of the final award. Section 287.495, which governs awards from the commission, states that such awards "shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court. . . ." Although claimant's notice of appeal was not filed within the time fixed by section 287.495, claimant maintains that his appeal is a cross-appeal. As such, claimant argues his appeal should be considered timely because Rule 81.04(b), which governs appeals generally, allows cross-appeals to be filed "within ten days of the date the first notice of appeal was filed."

Rule 81.04(b) governs appeals generally, while section 287.495 pertains specifically to those from the commission. Section 287.495 makes no provision for cross-appeals. The Missouri Constitution authorizes the Supreme Court to establish rules of practice but "the procedures outlined for an appeal by statute are mandatory and jurisdictional in that the jurisdiction of the appellate court depends upon strict compliance with the statutory procedural steps required to perfect an appeal."

*Holmes v. Navajo,* 488 S.W.2d 311, 313 (Mo.App.1972). Compliance with the time requirements of section 287.490, the predecessor to what is now section 287.495, has been held to be jurisdictional. *Id* at 313–314. The "special appeal" provisions of Rule 81.07 do not apply absent "specific legislative authority." *Id.* at 315. Section 287.495 requires that appeals should be filed within 30 days from the date of the final award. There is no specific legislative authority for the cross-appeal time provisions of Rule 81.04(b) to apply in workers' compensation proceedings. Thus, claimant's appeal was untimely. Accordingly, we have no jurisdiction to consider claimant's appeal, which must be dismissed.[2]

■ Employer also raises a jurisdictional issue, claiming that the commission lacked jurisdiction to review and reverse the ALJ's decision. Specifically, employer argues that the commission erred in accepting claimant's application for review because the application failed to comply with 8 CSR 20–3.030(3). This regulation provides that an application for review of a final decision by an ALJ shall state why the applicant believes the ALJ's decision is erroneous. It further states that "it shall not be sufficient merely to state that the decision of the [ALJ] on any particular issue is not supported by competent and substantial evidence." 8 CSR 20–3.030(3)(A).

We review claimant's application "in light of a liberal construction of 8 CSR 20–3.030(3)(A)." *Lawson v. City of St. Louis,* 839 S.W.2d 47, 49 (Mo.App.1992). In the application, claimant states that the ALJ erred in failing to find that evidence supported the application of the mutual benefit doctrine. This statement sufficiently apprised the parties as to which issues claimant believed were not supported by the ALJ's findings and conclusions. The commission properly accepted claimant's application for review.

■ We turn now to the merit of the appeals. We review the findings and awards made by the commission, not those of the ALJ. The commission is not bound by the findings of the ALJ and may reach its own conclusions. *Davis v. Research Medical Center,* 903 S.W.2d 557, 569 (Mo. App.1995). We review findings of fact in workers' compensation cases in the light most favorable to the decision of the commission, deferring to the commission when it resolves issues concerning the credibility and weight given to conflicting evidence. *Stockman v. J.C. Industries, Inc.,* 854 S.W.2d 24, 26 (Mo.App.1993). If supported by competent and substantial evidence, the commission's findings of fact are conclusive. *Kennison v. Ranken Technical Institute,* 44 S.W.3d 899, 901 (Mo. App.2001). "This court may modify, reverse, remand for rehearing, or set aside an award or decision of the Commission only if the Commission's actions were unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence on the whole record." *Reece v. Neal Chevrolet & Universal Underwriters Ins. Co.,* 912 S.W.2d 599, 601 (Mo.App.1995).

■ We first address the argument of both employer and the SIF that the accident did not arise in and out of the course of claimant's employment. Employers under the workers' compensation law are liable, regardless of negligence, for accidental personal injuries of an employee

---

**2.** We will consider claimant's arguments on appeal to the extent that they respond to claims of error raised by other parties, but not to the extent that they assert claims of error by the commission.

that arise out of and in the course of the employment. Section 287.120.1; *Gausling v. United Industries,* 998 S.W.2d 133 (Mo. App.1999). Determinations as to whether an accident arises out of and in the course of employment should be conducted on a case-by-case basis. *Wamhoff v. Wagner Electric Corp.,* 354 Mo. 711, 190 S.W.2d 915, 917 (1945). Generally, an employee does not suffer an injury arising out of and in the course of employment if he is injured while travelling to or from his place of employment. *Automobile Club Inter-Insurance Exchange v. Bevel,* 663 S.W.2d 242, 245 (Mo.1984). There are, however, exceptions to this "going and coming rule." The exceptions include injuries that occur while the employee is performing duties for the dual purpose of the employer and employee or for the mutual benefit of both. *Stockman v. J.C. Industries, Inc.,* 854 S.W.2d 24, 27 (Mo.App.1993). For the dual purpose doctrine to apply, the "trier of fact must be able to infer the employee would have made the journey even though the private purpose was absent." *Id.* The mutual benefit doctrine applies if an employee is injured while engaging in an act that benefits both the employer and the employee and "some advantage to the employer results from the employee's conduct." *Id.* Employer argues that neither of these doctrines is applicable.

█ Injuries sustained while going to work are compensable if the employer controls the transportation, the transportation is a continued practice, and the employer and employee mutually benefit from the arrangement. *Reece v. Neal Chevrolet & Universal Underwriters Ins. Co.,* 912 S.W.2d 599, 600 (Mo.App.1995). The mutual benefit prong is satisfied even when the advantage to the employer is slight. *Id.* The commission made factual findings on each of the three *Reece* requirements. On the issue of "employer's control" of the

transportation, the commission found that employer controlled the truck by using it when needed during business hours, paying for the insurance on the truck, providing maintenance on the truck, and advertising the business on the truck with the use of signs. On the "continued practice" requirement, the commission found that employer provided claimant's brother with transportation to go to and return from work and that employer acquiesced in allowing claimant to ride with his brother to and from work. The commission also found that employer did not put any time limitation on how long claimant or his brother could use the truck. On the third prong of "mutual benefit", the commission found that by ensuring that claimant and his brother had the means to arrive at work, employer received a benefit. The commission also found that the signs on the truck benefited employer by providing advertisement for the business. The commission acknowledged there was no direct evidence that claimant's use of the truck brought customers into the business, but it found that the "visibility of employer's business name on the truck could have induced new business and provided some benefit to employer." Additionally, it found that employer used the truck in business to carry tools and equipment and thus employer benefited from employee bringing the truck to work.

█ In this case, claimant did not have a dual purpose on his way home the day of the accident. There is no evidence that he would have made the trip absent his personal interest in returning home. However, claimant was providing a mutual benefit to himself and employer. Claimant's transportation to and from work in the truck was a negotiated term of claimant's employment. Although the truck was owned by Mr. Langley personally, the company paid the truck's insurance and

maintenance and used the truck for company benefit. Further, employer received the benefit of the advertising on the truck going to and from job sites, claimant's home, and employer's office. Viewing the record in accordance with our standard of review as noted above, the commission's findings are supported by competent and substantial evidence and are not against the weight of the evidence. It was not error for the commission to determine that claimant's accident arose out of and in the course of his employment.

■ We next address employer's claim that the commission erred in determining that employer was not covered by workers' compensation insurance at the time of the accident. Specifically, employer argues that "there was no substantial and competent evidence established as a matter of law that employer's payment was not timely postmarked for establishment of coverage." The original envelope in which the payment was sent and a photocopy of the original envelope were admitted into evidence. The envelope and the copy have U.S. postmarks and meter marks. Employer contends that the meter mark on the envelopes show June 15, 1992, which would establish coverage the following day, June 16, the date of the accident. Insurer argues that the meter mark shows June 16 and that as a result it issued the policy effective June 17, in compliance with its notice to the employer and under the guidelines filed with the Missouri Department of Insurance.

The commission made the following factual finding on the issue of when the premium check was deposited in the mail:

"The original envelope contains two postmarks clearly dated June 16, 1995. A copy of the same envelope, at first glance, appears to bear one postmark dated June 15, 1995. However, when the "5" in "95", is compared to the purported 5 in "June 15", there is a difference in the markings. The top of the "5" in the June 15 mark curves quite a bit more than in the 5 in the 95 mark. Also, the bottom part of the purported 5 in the June mark curves higher up than the bottom part of the curve in the 95 mark. It does not appear upon close examination that the June date is actually June 15. It appears to be a bad photocopy of the postmark."

We have carefully reviewed the exhibits and other documents in the record on appeal. There is substantial and competent evidence to support the commission's finding of fact that the postage mark date on the envelope sent by employer is June 16, 1995.

On the issue of the effective date for reinstatement of the lapsed insurance, insurer offered into evidence the Basic Manual, an insurance industry guide filed with the Missouri Department of Insurance. This manual provided that lapses in coverage "shall be for the time period from and inclusive of the date of cancellation through the date of the U.S. postmark appearing on the envelope containing the item correcting the fault. . . ." Using these guidelines, the period of lapse was correctly calculated as extending through June 16, 1995, the date of the U.S. postmark on the envelope. Accordingly, employer's workers' compensation coverage was properly reinstated the following day, June 17, 1995, under the guidelines in the Basic Manual filed with the Missouri Department of Insurance.

Although not contained in its point relied on, employer additionally contends in the argument portion of its brief that by accepting late payment of the premium, insurer was obligated to reinstate coverage

effective June 3, 1995.[3] As noted previously, the premium was not paid by the June 2, 1995 due date. Employer issued a check dated June 15 which the commission found was mailed June 16. The check was received by insurer June 20, and on June 22, 1995, insurer issued a renewal policy effective June 17, 1995.

 Employer relies on *Grassham v. Farm Bureau Town and Country Insurance Company of Missouri*, 684 S.W.2d 892, 896 (Mo.App.1984) in support of its claim that by accepting late payment, insurer was obligated to reinstate coverage with no lapse. Employer's reliance on *Grassham* is misplaced. In *Grassham*, the Southern District, citing *Mitchell v. Farmers Insurance Exchange*, 396 S.W.2d 647 (Mo.1965), held that an insurer, having accepted an insured's delinquent renewal premium, could not impose an uncommunicated condition and that coverage lapsed during the interval between the payment deadline and receipt of the check. *Grassham*, 684 S.W.2d at 896. The *Grassham* court distinguished the case of *Stone v. M.F.A. Mutual Insurance Co.*, 663 S.W.2d 774 (Mo.App.1983). In *Stone*, the insurer sent a premium billing and a second notice that stated that reinstatement of the policy after a delinquent payment would be effective the day the insurer received payment. *Stone*, 663 S.W.2d at 775. The *Stone* court held that the reinstatement of the lapsed insurance policy was effective on the date payment was received, in accordance with the notice to the insured. *Id.* In the present case, the insurer's notice of premium due specifically communicated to employer that in order to avoid a lapse in coverage, the renewal payment must be received by the due date, and if not received by the due date, either the policy would be issued with a lapse in coverage or the premium

check returned and no policy issued. Thus, having communicated advance notice to the insured that if the premium was not received by the due date, insurer would issue the policy with a lapse in coverage, insurer did not waive its right to insist upon prompt payment by accepting a late payment. The commission did not err in its determination that employer did not have workers' compensation insurance at the time of claimant's accident.

 Finally, the SIF argues that the commission erred in finding that the claim against the SIF was not barred by the statute of limitations in section 287.430. In its award, the commission found that the claim against the SIF did not arise out of a claim for additional benefits under section 287.220.1 and was therefore not governed by the special statute of limitations for the SIF set out in section 287.430. The commission found that the claim was against the SIF as a statutory guarantor of medical expenses under section 287.220.5, that the SIF had the same defenses under this section as the employer, and that since the claim was timely filed against the employer, the claim was not barred by the statute of limitations as to the SIF. We agree.

Liability of the SIF is governed by statute. Section 287.220.1 creates liability of the SIF in certain cases of permanent disability where there has been a previous disability. Section 287.141 creates liability for special weekly benefits in rehabilitation cases. Section 287.220.5 authorizes funds from the SIF to be withdrawn to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer, and certain expenses in the case of death of an employee of an uninsured employer. The

---

**3.** Claims of error not set out in the points relied on are not preserved for appeal. Rules 84.04 and 84.13(a). We will, however, review employer's claim of error *ex gratia*.

claim in this case falls under section 287.220.5, which imposes liability on the SIF as the statutory guarantor of past and future medical expenses for employees of uninsured employers.

The statute of limitations covering workers' compensation cases is set out in section 287.430. This section provides that all claims made against the SIF "shall be filed within two years after the date of the injury or within one year after a claim is filed against an employer or insurer pursuant to this chapter, whichever is later." Section 287.430. The SIF argues that this statute of limitations is controlling and bars this claim against the SIF for medical expenses in the case of an uninsured employer. Section 287.220.5, which covers such claims for medical expenses, provides, "In defense of claims arising under this subsection, the treasurer of the state of Missouri shall have the same defenses to such claims as would the uninsured employer." Since the claim for compensation against employer was timely under section 287.430, the defense of the statute of limitations was not available to the employer, and thus not available to the SIF under the provisions of section 287.220.5. Under the SIF's interpretation, the SIF would have available to it a defense not available to employer, which would conflict with the plain language of section 287.220.5. The commission did not err in determining that the claim against the SIF for medical expenses was not barred by the statute of limitations.

The award of the commission is affirmed. Claimant's appeal is dismissed for lack of jurisdiction.

RICHARD B. TEITELMAN, P.J., and GARY M. GAERTNER, J., concur.