**Robert S. HANGLEY and Sandra D. Hangley, Appellants,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent.**

**No. WD 48234.**

Missouri Court of Appeals,
Western District.

Feb. 8, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application to Transfer Denied
April 26, 1994.

Daniel William Olsen, Kansas City, for appellants.

Robert A. Mintz, Kansas City, for respondent.

Before SMART, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellants, Robert S. Hangley and his wife, Sandra D. Hangley, appeal the judgment of the trial court granting summary judgment in favor of respondent, American Family Mutual Insurance Company (American Family). The summary judgment was entered on appellants' petition against American Family requesting relief under section 379.200, RSMo Supp.1993, which is commonly referred to as an equitable garnishment proceeding. This proceeding is available to reach insurance money in satisfaction of a judgment.

Underlying this action is an automobile accident which occurred on March 2, 1990. In the accident in question, Gaetano D'Angelo was driving a vehicle which crossed the center line of the road and collided with a vehicle driven by Robert Hangley causing injury to Robert Hangley. Sandra Hangley's claim is derivative. The Hangleys argue that D'Angelo was insured by American Family at the time of the accident. Following the accident, legal action was undertaken which has a history as follows:

1. Subsequent to the accident, D'Angelo filed a petition in bankruptcy in the United States Bankruptcy Court for the Western District of Missouri. On June 7, 1990, a stipulation was entered in this bankruptcy proceeding allowing service of process of a civil action that the Hangleys were filing in the Jackson County Circuit Court against

D'Angelo. The stipulation as approved by the court also provided that if judgment was rendered against D'Angelo, the Hangleys would only be entitled to recover against the policy of insurance D'Angelo had with American Family. The Hangleys were precluded from recovering against any of D'Angelo's other assets.[1]

2. On June 20, 1990, the Hangleys filed suit against Gaetano D'Angelo in the Circuit Court of Jackson County for injuries from the automobile accident. (This action is hereinafter referred to as the Jackson County action.)

3. On September 14, 1990, American Family filed an action for Declaratory Judgment in the United States District Court for the Western District of Missouri naming Gaetano D'Angelo and Robert and Sandra Hangley as defendants. (This action is hereinafter referred to as the federal action.) In this federal action, American Family sought an order declaring that it owed no duty to indemnify or defend D'Angelo in the Jackson County action. American Family claimed that its policy of insurance providing coverage for D'Angelo had lapsed, been terminated or been cancelled. In other words, it was American Family's position that its policy of insurance did not provide coverage for D'Angelo.

4. On October 25, 1990, the Hangleys filed a motion to be dismissed from the federal action. The motion was denied, renewed on November 8, 1990, and denied again. The Hangleys filed another motion to be dismissed from the federal action on February 26, 1991.

5. On June 19, 1991, American Family first moved for summary judgment in the federal action.

6. On September, 17, 1991, the Hangleys were dismissed from the federal action pursuant to their motion of February 26, 1991. In dismissing the Hangleys from the federal action, the court found that the Hangleys' interest in the insurance policy was too remote to create an "actual controversy."

7. On January 8, 1992, the U.S. District Court denied American Family's motion for summary judgment.

8. In March of 1992, American Family again moved for summary judgment against D'Angelo in the federal action. On March 24, 1992, Judge D. Brook Bartlett of the United States District Court granted summary judgment in favor of American Family and against D'Angelo finding that D'Angelo, the only remaining defendant in the action, was in default.

9. The Hangleys filed a motion requesting the U.S. District Court to reconsider its March 24, 1992 order. The motion was denied, with Judge Bartlett ruling as follows:

> The Hangleys lack standing to challenge the March 24, 1992 order granting Summary Judgment to Plaintiff because they were dismissed from this action on September 17, 1991, pursuant to their own Motion to Dismiss in which they argued in part that dismissal was proper because no action or justiciable controversy existed between the parties.

10. On May 27, 1992, D'Angelo and the Hangleys reached a settlement in the Jackson County action which resulted in judgment being entered in favor of the Hangleys and against D'Angelo in the amount of $25,000. The Circuit Court further found that D'Angelo had been discharged in bankruptcy and that the Hangleys could only proceed to recover their judgment against insurance proceeds available to D'Angelo, if any.

11. On January 12, 1993, the Hangleys filed their petition against American Family, which is on appeal herein, requesting relief under section 379.200, RSMo Supp. 1993, for equitable garnishment. The Hangleys argued in their petition that American Family was obligated to pay the Hangleys' judgment against D'Angelo under the terms and provisions of American Family's policy of insurance providing coverage for D'Angelo. This was the same policy of insurance that was the subject of the federal action. American Family filed a motion for summary judgment arguing

1. D'Angelo was ultimately granted discharge in bankruptcy.

that the Hangleys' petition was barred by issue and claim preclusion and further that the policy issued to D'Angelo had lapsed and was terminated and cancelled. The motion was sustained by the circuit court without the court stating the reason for its judgment. It is this grant of summary judgment which is appealed herein.

Two points are presented on appeal: 1) whether the Jackson County action was barred as a result of collateral estoppel by the judgment in the federal action, and 2) if the Jackson County action was not barred by the federal action, whether there are material issues of fact which preclude summary judgment.

## Collateral Estoppel

 Collateral estoppel is defined as issue preclusion. Collateral estoppel precludes the same parties or their privies from relitigating issues which have been previously litigated. *Asarco, Inc. v. McNeill,* 750 S.W.2d 122, 127 (Mo.App.1988).[2] In order to invoke collateral estoppel, the following four elements must be found: 1) the issue decided in prior litigation must be identical to the issue presented in the present action; 2) the prior litigation must have resulted in a judgment on the merits; 3) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior litigation; and 4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior action. *Sunshine Realty Corp. v. Killian,* 702 S.W.2d 95, 98–99 (Mo.App.1985) (citing *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo. banc 1979)).

 The issues in the case at bar are the same as in the federal action, those issues being whether American Family's policy of insurance provided coverage for D'Angelo, resulting in a duty owed by American Family to indemnify D'Angelo in the Jackson County action. The United States District Court granted summary judgment in favor of

American Family and against D'Angelo on this question. However, the judgment was not a judgment rendered on the merits.

In pertinent part, the United States District Court found and ordered as follows:

This is a declaratory judgment action in which plaintiff American Family Mutual Insurance Company (American Family) seeks a determination that the insurance policy that it issued to defendant Gaetano D'Angelo provides no coverage for claims asserted against D'Angelo in a lawsuit filed in Jackson County Circuit Court.

\* \* \* \* \* \*

Defendant Gaetano D'Angelo is the only remaining defendant in this lawsuit because on September 17, 1991, defendants Robert S. and Sandra D. Hangley were dismissed as defendants, leaving D'Angelo as the sole defendant. D'Angelo is in default as he has filed no Answer and has not otherwise appeared. He also has filed no opposition to American Family's summary judgment motion.

Before the Hangleys were dismissed, they had filed Suggestions in Opposition to American Family's Motion for Summary Judgment. When I ruled the summary judgment motion on January 8, 1992, and reaffirmed on February 25, 1992, I relied on the Hangley's Suggestions in Opposition without realizing that D'Angelo was in default and had filed no opposition of his own. Because D'Angelo has filed no opposition, American Family's Motion for Summary Judgment will be granted and judgment entered in its favor and against D'Angelo and the Hangley's opposition was mooted by their dismissal.

Accordingly, it is ORDERED that:

1) the January 8, 1992, and February 25, 1992, orders are rescinded; and

2) American Family's Motion for Summary Judgment is granted and the Clerk of the Court is directed to enter judgment in favor of American Family and against defendant Gaetano D'Angelo.

---

**2.** Res judicata is defined as claim preclusion. Res Judicata precludes the same parties or their privies from relitigating the same cause of action. *Asarco,* 750 S.W.2d at 127. The cause of action here, equitable garnishment, is different from the cause of action in the federal action for declaratory judgment. However, the issues presented are the same.

The language of the United States District Court in its order granting summary judgment reflects that it was not a judgment on the merits. When the Hangleys were still parties to the federal action, the court relied on their opposition to summary judgment and denied the same. However, once the Hangleys' opposition was no longer an issue, the court entered judgment against D'Angelo because he had filed no answer, voiced no opposition, and was in default.

■ Where there is a question of whether a previous decision went to the merits of the case, no preclusive effect is given to the earlier decision. *S.M.B. by W.K.B. v. A.T.W.*, 810 S.W.2d 601, 605 (Mo.App.1991). The summary judgment of the United States District Court was not a judgment on the merits. Consequently, appellants' petition for equitable garnishment was not barred by collateral estoppel.[3]

### Issues of Fact

■ Since the present action was not barred by collateral estoppel, we must next consider if there were material issues of fact in regard to which there was a genuine dispute. Such issues preclude summary judgment. *ITT Commercial Finance Corp. v. Mid–American Marine Supply Corp.*, 854 S.W.2d 371, 378 (Mo. banc 1993).[4] In considering appeals from summary judgments, an appellate court reviews the record in the light most favorable to the party against whom the judgment was entered. *Id.* at 376 (citations omitted). The non-movant is accorded all reasonable inferences from the record. *Id.* at 376 (citations omitted).

■ In the case at bar, there are material issues of fact in dispute in regard to whether D'Angelo was covered under the terms of his policy with American Family. The record reflects that D'Angelo had a policy of insurance with American Family issued July 26, 1989, with $25,000 coverage per person for bodily injury for continuing periods of six months. American Family argues that at the time of the accident herein, March 2, 1990, the policy had lapsed for nonpayment of premium which was due by January 26, 1990. However, appellants argue that the policy was extended by American Family's dealings with D'Angelo.

D'Angelo testified that sometime in February of 1990, he contacted American Family in regard to his insurance policy and American Family told him that he owed $193 for the premium on his policy.

The record reflects that on February 1, 1990, American Family sent a letter to D'Angelo extending the expiration date to February 14, 1990. The letter stated in part: "Policy coverage is dependent upon your payment of the premium when due. In view of the fact that you have not paid the necessary premium, the above-numbered policy ... terminates on the date shown above [February 14, 1990], at the time stated in the policy."

On February 26, 1990, American Family mailed another letter by regular, first class mail, to D'Angelo which stated:

> Mr. Dangelo [sic], the attached letter [dated February 1, 1990] was sent to you, 'Certified Mail—Return Receipt Requested,' but has been returned to us by the postal service marked, 'No Record on File, Addressee Unknown.' Therefore, we are forwarding the letter to you by First Class Mail. Please notice the coverage is terminating as designated in the attached letter.

An internal memo of American Family reflects that on Thursday, March 1, 1990, American Family received a money order from D'Angelo in the amount of $100 and then D'Angelo's mother called American

---

3. Since the judgment of the United States District Court was not a judgment on the merits, collateral estoppel does not apply and it is not necessary for us to consider whether appellants were in privity with D'Angelo in the federal action or whether the appellants had a full and fair opportunity to litigate the issue in the federal action.

4. The question of whether material issues of fact precluded summary judgment was addressed by Judge Bartlett, in initial response to American Family's Motion for Summary Judgment in the federal action. We borrow from Judge Bartlett's order initially denying summary judgment without the benefit of quotes in determining whether material issues of fact preclude summary judgment.

Family on Monday and said she had mailed $93 on the Saturday following the accident. The accident was on Friday, March 2, 1990. Both the $100 and $93 payment were received and cashed by American Family.

■ A "continuing" insurance policy is one which is renewable for successive periods upon payment of premiums as they become due. *See Grassham v. Farm Bureau Town & Country Ins. Co.*, 684 S.W.2d 892, 895 (Mo.App.1984) (citations omitted).

■ Under Missouri law, where a "continuing" insurance policy does not contain a provision expressly stating that the insurance coverage is suspended from the expiration date until the time the renewal premium is paid, the payment of a past due renewal premium and its acceptance by the insurance company is evidence of a waiver of the insurance company's right to insist on prompt payment. *Armour v. Cameron Mut. Ins. Co.*, 770 S.W.2d 464, 465 (Mo.App.1989). "Forfeiture of an insurance contract for nonpayment of premiums is not favored in the law and courts are prompt to seize upon circumstances which indicate an election to waive the forfeiture." *M.F.A. Mut. Ins. Co. v. Quinn*, 259 S.W.2d 854, 859 (Mo.App.1953).

*Mitchell v. Farmers Insurance Exchange*, 396 S.W.2d 647, 651–52 (Mo.1965), involved a "continuing" insurance policy that did not contain a provision stating that coverage would be suspended from the stated expiration date until receipt of the renewal premium. The deadline for payment of the renewal premium, May 3, 1961, was fixed by the policy but was later extended to May 18, 1961, by an "avoid lapse" notice sent to the policyholder. *Id.* at 648. On May 17th, the policyholder mailed a check to the insurance company for the renewal premium. *Id.* at 648. This check reached the insurance company on May 19th, the day after the expiration date. On May 20th, the policyholder was involved in an automobile collision. *Id.* at 649. On May 22nd, the insurance company stamped the check received. On June 6th, the insurance company learned of the accident. *Id.* at 649. On June 23rd, the insurance company concluded that the policy had not been in effect at the time of the accident but that it should be "reinstated"

effective May 23rd. On June 26th, the company advised the policyholder of this conclusion by letter. *Id.* at 649.

The court noted that Missouri courts have consistently held that with regard to continuing policies, insurers may waive the conditions for payment of renewal premiums. *Id.* at 652. The court concluded that regardless of the time limits fixed by the policy and the "avoid lapse" notice, and regardless of whether the act of mailing the check was considered payment, acceptance of the delinquent premium waived all requirements concerning timely payment. *Id.* at 652. Having accepted the policyholder's delinquent premium, the insurance company could not impose on the policyholder an *uncommunicated* condition, *i.e.*, that coverage lapsed during the interval between the payment deadline and receipt of the check. *Id.* at 651. Because the insurance company had accepted the premium without first informing the policyholder that there would be a gap in coverage due to late payment, the policy was renewed without a gap in coverage and was in effect on the date of the accident. *Id.* at 652.

The Missouri Court of Appeals reached the same result in *Grassham v. Farm Bureau Town & Country Insurance*, 684 S.W.2d at 896. There, the policy was also a "continuing" fire insurance policy which did not contain a provision stating that coverage was suspended from the stated expiration date until receipt of the renewal premium. *Id.* at 894. The policy's expiration date was November 23, 1981. On November 1st or 2nd, a computer-generated notice was sent to the policyholder stating that the policy would be cancelled on November 23rd, the policy's expiration date, if the renewal premium was not received by then. *Id.* at 893. On November 25th, the policyholder's bookkeeper wrote a $110 check for the renewal premium and mailed it to the insurance company. *Id.* at 893. On November 28th, the insurance company received the check and deposited it into its bank account. On November 29th, the policyholder learned that the insured property had burned on November 24th, and notified the insurance company of the loss. *Id.* at 893. In a letter dated December 11th, the insurance company notified the policy-

holder that the policy had expired on November 23rd due to nonpayment of premium, and thus, the November 24th loss was not covered. The company retained the renewal premium because, according to its records, the policy had been "reissued" with coverage starting on November 28, 1981. *Id.* at 894.

The court stated that under Missouri law, "[a]cceptance of late renewal payments ... is evidence of a waiver by an insurance company of its right to insist on timely payment." *Id.* at 896. The insurance company's acceptance of the policyholder's check "supplied substantial evidence of a waiver by [the insurance company] of its right to receive the renewal premium on or before [the expiration date]." *Id.* at 896. Having accepted the renewal premium, the company "could not impose an *uncommunicated* change in the renewed one-year term of ... coverage." *Id.* at 896. (emphasis added). The court emphasized that the insurance company had not notified the policyholder before accepting the late premium that the new period of coverage would begin on November 28th, which would cause a gap in coverage.

The court distinguished *Stone v. M.F.A. Mutual Insurance Co.*, 663 S.W.2d 774 (Mo. App.1983), in which the insurer had "made it plain" to the insured in two separate written communications that delinquent payment of a premium, if accepted by the insurer, would result in resumption of coverage effective the day the insurer received payment. *Grassham*, 684 S.W.2d at 897.

The policy at issue in the case at bar is a "continuing policy." The terms of the policy provide that the policy may be renewed for successive periods by paying a renewal premium. In addition, there is no provision in the policy stating that the failure to pay the premium in a timely manner will result in suspension of D'Angelo's coverage from the stated expiration date until receipt of the renewal premium. Thus, the principles of *Mitchell* and *Grassham* apply in this case.

When American Family received the $100 money order on March 1, 1990, and the subsequent $93 check, it had the right to reject them in a timely fashion and thus escape liability for any loss occurring after 12:01 a.m., January 26, 1990. However, having specified in the policy that renewal premiums must be paid by a certain time, American Family was also free to waive that requirement and accept the late renewal payments. American Family chose to accept D'Angelo's premium payments even though they were late.

Based on *Mitchell* and *Grassham*, the acceptance of the late renewal payments is substantial evidence of a waiver by American Family of its right to timely receive the renewal premium. Furthermore, D'Angelo presented facts showing that American Family did not "communicate" to him that delinquent payment of renewal premiums would cause his insurance coverage to lapse during the interval between the expiration date and receipt of the delinquent payment. It is D'Angelo's position that American Family did not send him a notice stating that delinquent payment of a premium would result in a gap in coverage and that the coverage would resume when American Family received the premium. No such statement is made in the February 1, 1990 and February 26, 1990 letters to D'Angelo. Also, according to D'Angelo, American Family did not communicate verbally that his delinquent premium payments were unacceptable or that there would be a gap in D'Angelo's insurance coverage. The letter of February 1, 1990 states that the termination date was extended to February 14, 1990.

American Family argues that D'Angelo admitted that he was advised by American Family that there would be a gap in coverage due to his late payment of premium. However, the evidence in this regard is not sufficient to support a summary judgment in favor of American Family.

In his deposition, D'Angelo repeatedly testified that American Family never advised him that his policy was cancelled, that his payments were unacceptable, or that his insurance had lapsed. To the contrary, D'Angelo's payments were accepted and cashed and the refund of premium that D'Angelo later received was by separate check from American Family.

American Family attempts to rely on the fact that after responding to questions from his counsel, D'Angelo was questioned in his

deposition by counsel for American Family and the following exchange took place:

Q. [counsel for American Family]: You contacted American Family sometime in February of 1990 to ask them about money that you owed?

A. [Mr. D'Angelo]: (Nods head yes.)

Q. Is that correct?

A. Yes.

Q. And they informed you that upon receipt of certain funds, you would have coverage from that point on?

A. Yes.

The above testimony arguably clouds D'Angelo's otherwise unequivocal statements that he was never told that his insurance had lapsed or would lapse or that his late payments were unacceptable to continue his insurance. However, the question and answer are subject to interpretation particularly in light of D'Angelo's other testimony.

First, the term "certain funds" was not defined. D'Angelo may have understood the term "certain funds" to mean the "certain" amounts that he paid (that is, either or both of the two payments he made). Second, the term "from that point on" was not fixed in time. If the term meant 1) the time of the discussion (February) or 2) the time of the first payment (March 1st), then there was coverage, because both occurred before the March 2nd accident. In any event, American Family accepted D'Angelo's payments and D'Angelo testified that he was not advised that his policy had lapsed.

Reviewing the record in the light most favorable to D'Angelo and according him all reasonable inferences from the record, American Family is not entitled to judgment as a matter of law. A genuine issue is presented for trial in regard to whether American Family waived its right to demand timely payment of the renewal premium.

The judgment of the trial court is reversed and this cause remanded for further proceedings.

All concur.