Wilma Earline HAYES and D. Keith Thomas and Tamara Thomas, Plaintiffs/Respondents,

v.

UNITED FIRE & CASUALTY COMPANY, Defendant/Appellant.

No. ED 75178.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 31, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 20, 1999.

Application for Transfer Denied Nov. 23, 1999.

Thomas J. Noonan, St. Louis, for appellant.

Cheryl Callis, Jeffrey S. Thomsen, St. Louis, for respondent.

CLIFFORD H. AHRENS, Judge.

United Fire & Casualty Company ("United Fire") appeals from the grant of summary judgment in favor of Wilma Earline Hayes, D. Keith Thomas and Tamara Thomas (collectively "plaintiffs") in an equitable garnishment action under section 379.200, RSMo 1994.[1] Plaintiffs sought to garnish insurance proceeds for amounts due on default judgments for personal injuries resulting from an automobile accident. We reverse and remand.

On August 10, 1992, Russell Dean White was involved in an automobile accident in which Wilma and Keith[2] suffered personal injury. Plaintiffs filed suit in the Circuit Court of the City of St. Louis in cause number 932–01346 ("underlying action") and named as defendants John White and Becky White, doing business as White's Landscaping, and Russell (collectively "the Whites"). In her petition, Wilma alleged that Russell "was acting within the course and scope of his duties for John and Becky White" and was negligent in the operation of his vehicle. The Thomases alleged counts of negligence, respondeat superior, negligent entrustment due to John's and Becky's knowledge that Russell had a physical condition which caused him to lose consciousness, and loss of consortium. United Fire represented the Whites under the commercial automobile policy issued to White's Landscaping.

Russell, the son of John and Becky, was their employee at the time of the accident. Plaintiffs took the deposition of Russell on January 19, 1994. Becky was deposed on May 24, 1994. John failed to appear for two scheduled depositions. As a result, the trial court struck John's pleadings on June 28, 1994.

Subsequent to June 8, 1994, the White's attorney, David Coffman, lost contact with his clients. Ten letters were written from that date until October 10, 1994. One of the letters, dated June 28, 1994, was sent by certified mail. None of the letters was claimed. Coffman drove to their residence twice and attempted to reach them by telephone several times. He learned that the Whites had moved and disconnected their telephone. Private investigators hired by United Fire were unable to locate the Whites.

On October 3, 1994, United Fire filed a petition for declaratory judgment in the Circuit Court of St. Charles County in cause number CV194–5790CC. In this action, United Fire alleged that, due to the failure of the Whites to cooperate, it was substantially prejudiced in its defense of the underlying action. United Fire claimed that the Whites were therefore in violation of the insurance policy. The Whites were served by publication. The trial court entered a default judgment which determined that United Fire owed no duty to defend or indemnify the Whites in the underlying action.

On April 3, 1995, Coffman filed a motion to withdraw in the underlying action. This motion recited that he had been retained by United Fire, John had not participated in required discovery and counsel had been unable to locate the Whites. The trial court granted Coffman's motion on May 18, 1995.

On May 24, 1996, the trial court entered a default judgment in favor of plaintiffs and against the Whites in the underlying action.

Thereafter, plaintiffs filed an equitable garnishment action, cause number CV196–4347CC, in the Circuit Court of St. Charles County. In this action, plaintiffs sought to have the Whites' insurance proceeds applied to the judgments granted in their favor in the underlying action. United Fire moved for summary judgment and alleged that the declaratory judgment collaterally estopped plaintiffs from contesting United Fire's duty to indemnify or defend the Whites or, in the alternative,

1. All statutory references are to RSMo 1994 unless otherwise indicated.

2. We refer to the parties by their first name for ease of reference, not out of disrespect.

that the Whites had materially breached their duty to cooperate under the insurance policy and plaintiffs were therefore not entitled to recover under the Whites' policy.

Plaintiffs also moved for summary judgment. In their joint memorandum of law, plaintiffs alleged that collateral estoppel did not apply in this case and that United Fire had not demonstrated substantial prejudice due to the Whites' failure to cooperate. On August 28, 1998, the trial court entered summary judgment in the equitable garnishment action in favor of plaintiffs. United Fire appeals from this judgment.

■ In its first point on appeal, United Fire argues that the Whites were collaterally estopped from litigating the issue of whether United Fire had the duty to indemnify or defend the Whites. United Fire points to the default declaratory judgment in which the Circuit Court of St. Charles County found that United Fire owed no such duty. It is then argued that as plaintiffs "stand in the shoes" of the Whites, plaintiffs were similarly estopped from litigating this issue. We disagree.

■ In reviewing whether to apply the doctrine of collateral estoppel, a court should consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party ·or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. *Baldridge v. Lacks*, 883 S.W.2d 947, 950 (Mo.App.1994); *Cox v. Steck*, 992 S.W.2d 221, 223–24 (Mo.App. 1999).

Plaintiffs proceeded in an equitable garnishment action under section 379.200. As such, they stand in the shoes of the Whites. *See Killian v. State Farm Fire &*

*Cas. Co.*, 903 S.W.2d 215, 216 (Mo.App. 1995). Plaintiffs' right of recovery is no greater and no less than that of the Whites. *Id.* The breadth of plaintiffs' right of recovery in this case is controlled by the decision of the Western District of this court in *Hangley v. American Family Mutual Ins. Co.*, 872 S.W.2d 544 (Mo.App. 1994). In *Hangley*, the plaintiffs were involved in an automobile accident with Gaetano D'Angelo. 872 S.W.2d at 545. The defendant was D'Angelo's insurer. The plaintiffs sued D'Angelo in the Circuit Court of Jackson County for injuries resulting from the accident. *Id.* at 546. Before that case was heard, the United States District Court for the Western District of Missouri granted the insurer default summary judgment and determined that the insurer did not owe D'Angelo a duty to indemnify in an action between the plaintiffs and D'Angelo. *Id.* at 547. D'Angelo and the plaintiffs settled the Jackson County suit. The plaintiffs then filed an action against the insurer under section 379.200. *Id.* at 546. The insurer claimed that the plaintiffs were collaterally estopped from litigating the issue of insurance coverage in light of the federal summary judgment. However, the *Hangley* court found that the federal judgment was not on the merits. *Id.* at 548. "Where there is a question of whether a previous decision went to the merits of the case, no preclusive effect is given to the earlier decision." *Id.*

Other decisions of this court hold that a "judgment on the merits is one rendered after argument and investigation and when it is determined which party is in the right, as distinguished from a judgment rendered upon some preliminary or technical point, or by default, and without trial." *Laususe v. Normandy Osteopathic Hosp.*, 918 S.W.2d 953, 956 (Mo.App.1996); *see also Bi–State Dev. Agency v. Whelan Sec. Co.*, 679 S.W.2d 332, 336 (Mo.App.1984). We find that *Hernandez v. Westoak Realty & Investment, Inc.*, 771 S.W.2d 876, 884 (Mo.App.1989), upon which United Fire re-

lies in its brief on this issue, is inapplicable.

The judgment entered in the declaratory judgment action was not a judgment on the merits. Consequently, plaintiffs' petition for equitable garnishment was not barred by collateral estoppel. Point denied.

■■■ In its second point on appeal, United Fire argues that the trial court erred in entering summary judgment in favor of plaintiffs and finding "as a matter of law United Fire ... failed to establish it was prejudiced in the defense of the [p]laintiffs' claims by the actions of [the Whites]." When considering an appeal from a summary judgment, this court will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* A claimant must establish that there is no genuine dispute as to those material facts upon which the claimant would have had the burden of persuasion at trial. *Id.* at 381. Where a defendant has raised an affirmative defense, the claimant must also establish that the affirmative defense fails as a matter of law. *Id.* The claimant may defeat an affirmative defense by establishing that any one of the facts necessary to support that defense is absent. *Id.*

■■■ The rights of the injured person bringing an action against the insurer for equitable garnishment are derivative and can rise no higher than those of the insured, so that the insurer may set up in the garnishment proceeding the defense of non-cooperation by the insured. *Anderson v. Slayton*, 662 S.W.2d 575, 577 (Mo.App. 1983). A cooperation clause in an insurance policy is a condition subsequent which necessitates proof by the insurer of facts sufficient to relieve it of liability. *Id.* After a material breach has been proved, unless the insurer has waived its right to assert the defense of material breach or is estopped from asserting it, the insurer may deny liability coverage to the insured under the terms of the policy. *Hendrix v. Jones*, 580 S.W.2d 740, 742 (Mo. banc 1979). An insurer must prove (1) the existence of substantial prejudice and (2) the exercise of reasonable diligence to secure the insured's cooperation before it can deny coverage because of breach of a cooperation clause. *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo.App.1984). Plaintiffs must establish the absence of facts necessary to support this defense to prevail on a motion for summary judgment. *See Dodson v. State Farm General Ins. Co.*, 972 S.W.2d 450, 451 (Mo.App.1998).

The insurance policy at issue provided that "you and any other involved 'insured' must ... [c]ooperate with [United Fire] in the investigation, settlement or defense of the claim or 'suit.'" The policy further stated that "[t]he following are 'insureds:'" ... [a]nyone else while using with your permission a covered 'auto' you own, hire or borrow[.]" The policy also contained a severability clause which stated that "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought."

In *Hendrix*, the Missouri Supreme Court abolished the notion of a per se rule of a material breach of the cooperation clause due to the insured's failure to appear at trial. 580 S.W.2d at 743. The court ordered that the jury's verdict in favor of the insurer be reversed and judgment be entered in favor of the plaintiffs-garnishers because the insurer would be unable to prove at trial that it had been substantially prejudiced. *Id.* at 745. The insurer had alleged that it had been prejudiced because (1) the absence of the in-

sured at trial had effected the jury's verdict and (2) the absence of the insured prevented his consultation in matters of trial strategy. *Id.* at 744–5. *Hendrix* differs from the case at bar, however, because in *Hendrix* the insurer intended to admit liability on behalf of the insured and defend only on the issue of damages. *Id.* at 741.

In *Riffe*, the insured failed to cooperate with the insurer in answering interrogatories and failed to appear at scheduled hearings. 684 S.W.2d at 542–3. As a result, the insured's pleadings were stricken and the trial court entered an interlocutory judgment on the issue of the insured's liability. The Western District of this court found that such actions "compounded [the insurer's] difficulty in effectively defending the case on [the insured's] behalf." *Id.* at 543. The *Riffe* court went on to state that, "the record support[ed] that [the insured's] lack of cooperation constituted a material breach of the cooperation clause and that [the insurer] was 'substantially prejudiced' thereby." *Id.*

In the underlying action, plaintiffs alleged that Russell was negligent and that John and Becky were liable under the theory of respondeat superior for the injuries suffered in the scope and course of their business. The Whites alleged that Russell's loss of consciousness was sudden, unexpected and unforeseen at the time of the accident because it was a previously undetected and unknown medical condition. In his deposition called by plaintiffs, Russell testified that approximately one year prior to the accident at issue, he had been involved in another collision in which he had veered off the highway and into a ditch. He did not know what had caused the accident, but thought he had fallen asleep or "blacked out." Russell was diagnosed as having suffered a seizure and was prescribed medication for his condition. He was unable to recall the accident which gave rise to the instant case.

Dr. Robert Yanover, Russell's neurologist, was also deposed. He testified that

Russell had suffered a seizure and an unforeseeable loss of consciousness before both accidents. Becky testified that Russell had informed her that he had passed out prior to the first accident.

Coffman represented the Whites in the underlying case until he withdrew following the declaratory judgment in favor of United Fire. In his affidavit in support of United Fire's motion for summary judgment in the equitable garnishment action, Coffman stated that in light of

[Russell]'s and Dr. Yanover's testimony, it was my strategy to defend [the underlying action] on the grounds that the ... collision occurred as a result of an unforeseen loss of consciousness ... In my opinion, it was essential for the success of this defense to present [Russell]'s testimony live at trial because the strategy turned on his credibility ... Moreover, because [John]'s pleadings were stricken, I was unable to defend the Thomases claim that [John] knew about Russell's epilepsy and negligently entrusted the truck to him.

█ The Thomases allege that because United Fire did not defend the underlying action at trial, which resulted in a default judgment in favor of plaintiffs, it is impossible to determine whether any of the Whites would have appeared. Judgment was entered in the underlying action one year after United Fire withdrew. The Whites failed to appear during that time. Under these facts, we cannot agree with the Thomases' assertion that United Fire was not prejudiced as a matter of law because of the possibility that the Whites may have appeared had they been represented at trial.

Plaintiffs do not allege that United Fire was not diligent in its efforts to locate the Whites prior to withdrawal from the case. Viewing the facts in the light most favorable to United Fire, plaintiffs have failed to prove as a matter of law that the facts necessary to support United Fire's defense are absent. A trier of fact could reason-

ably find that United Fire was substantially prejudiced by the Whites' breach of the cooperation clause. *See Riffe*, 684 S.W.2d at 543. This issue creates a genuine issue of material fact, making summary judgment improper. Point granted.

■ In light of our decision above, we address plaintiffs' argument that due to the insurance policy's severability clause, the issue of each insured's cooperation must be considered separately and rise or fall on its own merit. If we were to find that one or more of the insureds was in material breach of the cooperation clause, plaintiffs urge us to hold that this would have no effect on United Fire's duty to non-breaching parties. Although United Fire failed to favor us with a response to this theory in its reply brief, we find that the assertion is incorrect.

In the insurance policy at issue, it provides that to be covered, John "and any other 'insured'" must cooperate with United Fire in the "investigation, settlement or defense" of a claim or suit. The unambiguous meaning of this clause is that coverage is precluded to all persons covered by the policy if any one of them breaches the cooperation clause.

Any ambiguity or uncertainty in an insurance policy must be resolved in favor of the insured. *Millers Mut. Ins. Ass'n of Illinois v. Shell Oil Co.*, 959 S.W.2d 864, 867 (Mo.App.1997). We have addressed the impact of a severability clause on the interpretation of an otherwise unambiguous insurance contract in our decision of *American Family Mutual Ins. Co. v. Copeland–Williams*, 941 S.W.2d 625 (Mo. App.1997). In that case, the insurance policy excluded from coverage "bodily injury or property damage which is either expected or intended from the standpoint of any insured." 941 S.W.2d at 627. The policy also contained a severability clause sufficiently similar to the one at bar. The two insureds admitted that the insurance policy did not cover the intentional acts of one, but argued that under the severability clause, the other insured was covered for acts which were alleged to be negligent. This court disagreed and held that coverage of the negligent insured would also be excluded

> because the exclusionary clause declare[d] that no coverage will be given to the insureds if *any* insured has expected or intended bodily injury to another. This policy provision unambiguously states that the [insured's] rights are jointly rather than severally held ... [i]n other words, coverage is contingent upon the conduct of any insured and if one insured's conduct falls under this exclusion, all other insureds are barred from coverage.

941 S.W.2d at 628 (emphasis theirs).

The *Copeland–Williams* court went on to hold that "the purpose of the severability clause is not to negate the plainly worded meaning of the ... exclusion clause." *Id.* (quoting *American Family Mut. Ins. Co. v. Moore*, 912 S.W.2d 531, 533–4 (Mo. App.1995)). Similarly, in this case the severability clause does not alter the unambiguous meaning of the cooperation clause. *See id.* at 629; *Moore*, 912 S.W.2d at 533–4. An insurer may deny coverage due to the insured's breach of the cooperation clause. *Riffe*, 684 S.W.2d at 543. On remand, should the trial court find that one insured materially breached the cooperation clause to the substantial prejudice of the insurer, coverage is precluded as to all.

The judgment is reversed and remanded for further proceedings.

RICHARD B. TEITELMAN, P.J., concurs.

LAWRENCE E. MOONEY, J., concurs.