# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2324

_____

| | | |
|---|---|---|
| The Medical Protective Company, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| James E. Bubenik, D.M.D.; James | * | On Appeal from the United |
| E. Bubenik, D.M.D., P.C., | * | States District Court for the |
| | * | Eastern District of Missouri. |
| Defendants, | * | |
| | * | |
| Joseph C. Johnston, individually; | * | |
| Mary Johnston, through her legal | * | |
| guardian, Joseph C. Johnston, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: January 12, 2010
Filed: February 18, 2010

_____

Before MURPHY and BYE, Circuit Judges, and STROM,[1] District Judge.

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

Medical Protective Company (MPC) brought this declaratory judgment action against its insured, Dr. James Bubenik, and Joseph and Mary Johnston, who had obtained a state court judgment against the doctor for malpractice, contending that it had no duty to pay because Dr. Bubenik had materially breached the terms of his insurance policy. The district court[2] entered a declaratory judgment in favor of MPC and the Johnstons appeal. We affirm.

Dr. Bubenik was a dentist specializing in conscious sedation dentistry and MPC provided his medical malpractice insurance. A patient named Marlon Jaudon died in July 2004 during a procedure at Dr. Bubenik's office. Six months later Dr. Bubenik performed the same type of procedure on Henry Johnston. Johnston did not regain consciousness and died four days later.

Malpractice actions were filed against Dr. Bubenik by the Jaudon family and subsequently by the Johnstons. During the course of the Jaudon litigation, Dr. Bubenik invoked his Fifth Amendment privilege against self incrimination and refused to offer any testimony. In March 2006 MPC told Dr. Bubenik that his refusal to testify might jeopardize his insurance coverage. MPC's counsel sent Dr. Bubenik a letter on April 3, 2006 stating that his continued refusal to testify might be a material breach of the cooperation clause in his policy. That clause provided that "[t]he Insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such claim."

On the morning of the Jaudon trial, the presiding judge disqualified Dr. Bubenik's expert witness for that case because her opinion was based on information which had been given her by the doctor but was not in the record. MPC settled the

---

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

Jaudon case the same day, but it was unable to contest coverage at that point because it had not sent Dr. Bubenik a reservation of rights letter.

During the course of the Johnston litigation, Dr. Bubenik again asserted his Fifth Amendment privilege. He refused to answer interrogatories, submit to a deposition, or testify at trial. When asked about the merits of his defense, Dr. Bubenik told MPC that the Johnston case was defensible but that he was unwilling to discuss how it could be defended. He also refused to release to MPC a state dental board report completed six days after Johnston's death. That report related what had occurred on Johnston's visit and contained Dr. Bubenik's opinion as to the cause of his death, information that was not contained in the dental records released to MPC.

MPC sent Dr. Bubenik's personal attorney a letter in August 2006 which stated:

> Pursuant to the policy terms, including the provisions pertaining to his duty to cooperate, Dr. Bubenik is required to "fully cooperate" and "assist in the preparation and trial" of claims against him. Specifically, this duty to cooperate requires Dr. Bubenik to answer interrogatory requests, provide testimony in his defense at deposition and at trial, and assist MPC in the defense of this matter, all of which he has refused to do.

The letter from the insurer further advised that "Dr. Bubenik's failure to cooperate or testify creates a complete obstacle to the ability of MPC to defend the claims" against him and that "[a]bsent his full cooperation . . . MPC will be forced to choose between electing to deny coverage or providing a continued defense only under a full reservation of rights."

Neither Dr. Bubenik nor his counsel responded to the August letter. A similar letter was sent in October 2006. Again MPC received no response. Finally at an October mediation in the Johnston case, MPC hand delivered to Dr. Bubenik a letter

stating that he had breached the cooperation clause and that MPC was reserving its rights under the policy.

By early November 2006 Dr. Bubenik knew that MPC planned to seek a declaratory judgment that it was not liable to pay any judgment in the Johnston case due to his breach of the cooperation clause. He entered into a settlement with the Johnstons in which they agreed to pursue execution of any judgment only against MPC. Shortly thereafter, MPC filed this declaratory judgment action in federal district court, joining the Johnstons as defendants. The state court action went to trial in December resulting in a $2.4 million judgment in favor of the Johnstons against Dr. Bubenik. The federal district court subsequently concluded that MPC was not liable for that judgment because Dr. Bubenik had breached the cooperation clause in his policy by failing to testify and assist with his defense. The court also concluded that MPC neither waived nor should be estopped from asserting its affirmative defense.

The Johnstons appeal, asserting that MPC failed to make the showing required by Missouri law to deny coverage for breach of a policy cooperation clause. They also claim that MPC waived this defense and should be estopped from denying coverage. We review the findings of fact made by the district court in a bench trial for clear error and its conclusions of law de novo. Eckert v. Titan Tire Corp., 514 F.3d 801, 804 (8th Cir. 2008).

Cooperation clauses such as the one at issue here are valid and enforceable under Missouri law. Union Ins. Co. of Providence v. Williams, 261 F.Supp.2d 1150, 1152 (E.D. Mo. 2003). To deny liability coverage under such a provision, an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation. Wiles v. Capitol Indem. Corp., 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001).

The policy cooperation clause provides that, "[t]he Insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such claim." The district court concluded that Dr. Bubenik had materially breached that clause by failing to answer interrogatories, participate in discussions, share documents, submit to a deposition, or testify at trial. The Johnstons respond that the cooperation provision in the policy was ambiguous and must therefore be construed in favor of coverage. Alternatively, they argue that the cooperation clause amounted to a waiver of constitutional rights and that it could not be enforced unless it was explicit and conspicuous.

Whether a contract is ambiguous as written is a question of law which we review de novo. United States v. Brekke, 97 F.3d 1043, 1049 (8th Cir. 1996). Missouri law accords the terms of an insurance policy "the meaning which would be attached by an ordinary person of average understanding." Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 132 (Mo. 2007). If the language of the contract is clear and unambiguous, it must be enforced as written. Krombach v. Mayflower Ins. Co., Ltd., 827 S.W.2d 208, 210 (Mo. 1992). If the policy contains ambiguities, however, we must resolve them "in favor of the insured." Seeck, 212 S.W.3d at 132. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." Id.

The Johnstons assert that the general terms of the cooperation clause are ambiguous because they "do not express plainly that the insured will be required to give testimony." That the clause is general does not mean that it is ambiguous, however. In construing a similarly general cooperation clause, the Missouri Supreme Court has recognized that "[a] multitude of matters other than those specified in the [policy] might be said to be included under the term ['cooperate'], depending upon the particular facts in the particular case." Meyers v. Smith, 375 S.W.2d 9, 15 (Mo. 1964).

There are a number of Missouri cases in which general cooperation clauses like the one at issue here have been interpreted to require the insured to perform acts not explicitly stated in the insurance policy. See, e.g., Smith v. Progressive Cas. Ins. Co., 61 S.W.3d 280, 283 (Mo. Ct. App. 2001); Hayes v. United Fire & Cas. Co., 3 S.W.3d 853, 857–59 (Mo. Ct. App. 1999); Riffe v. Peeler, 684 S.W.2d 539, 542–43 (Mo. Ct. App. 1984); Meyers, 375 S.W.2d at 15. In Riffe, the insured breached a general cooperation clause by failing to assist in the preparation of interrogatories and failing to appear at scheduled hearings. 684 S.W.2d at 542. In Meyers, the insured materially breached such a clause by providing conflicting statements to his insurer. 375 S.W.2d at 18–19. In neither of these cases did the respective cooperation clause mention the specific action taken by the insured which was held to be a material breach.

After considering the Missouri cases and the policy language in question, we conclude that the MPC cooperation clause was not ambiguous. A common sense interpretation of the language requiring that Dr. Bubenik "fully cooperate" and "assist in the preparation and trial of any [claims]" included the duty to assist MPC in its defense strategy, provide relevant documents, answer interrogatories, submit to depositions, and testify at trial if necessary.

The cases relied upon by the Johnstons are not to the contrary. American Home Assurance Company v. Pope, 08-2848, 2010 WL 58949, at *6 (8th Cir. Jan. 11, 2010) involved an insurance policy containing contradictory provisions. There, the court concluded that those provisions were thus ambiguous and to be interpreted in favor of the insured. Id. at *6–7. We are not dealing with conflicting provisions here. The Johnstons also cite a number of Missouri cases where the cooperation provisions had more specific language than in the MPC policy. They assert that it would have been easy for MPC to have drafted such a provision, but they have not cited any case showing that Missouri law requires such specificity in a cooperation clause.

The Johnstons assert that the policy's cooperation clause should be deemed unenforceable even if unambiguous because it amounts to a waiver of constitutional rights. They rely primarily on Malan Realty Investors, Inc. v. Harris, 953 S.W.2d 624, 627 (Mo. 1997), in which the Missouri Supreme Court stated that "[t]o effectively waive a jury trial by contract, clear, unambiguous, unmistakable, and conspicuous language is required." Malan is inapposite, however, because the MPC insurance policy did not require an actual waiver of Dr. Bubenik's constitutional rights. He retained the choice whether to invoke his Fifth Amendment rights at the price of losing his insurance coverage or to cooperate with the defense attorneys provided him and retain his coverage. Both options remained available to him throughout the pendency of the Johnston case. We conclude that the district court did not err in concluding that Dr. Bubenik materially breached the cooperation clause in his insurance policy.

Once a material breach has been established, an insurer must prove that it was substantially prejudiced by the insured's breach in order to be excused from covering the loss. Hayes, 3 S.W.3d at 857. "In determining whether the failure of an insured . . . to testify was prejudicial to the insurer, the courts have generally considered the importance of the insured's testimony to the defense." Hendrix v. Jones, 580 S.W.2d 740, 743 (Mo. 1979) (en banc). The district court concluded that MPC was substantially prejudiced by Dr. Bubenik's refusal to cooperate because he could have provided the defense valuable information not available from any other source and his ultimate refusal to testify made it impossible for MPC to produce an expert witness.

The Johnstons further object that MPC could not have been substantially prejudiced by Dr. Bubenik's failure to cooperate because the Johnston case was indefensible. This argument rests on a misunderstanding of the applicable legal standard, however, for MPC does not need to show that it would have won the case with Dr. Bubenik's cooperation. Rather, it must "prove how [Dr. Bubenik's

noncooperation] actually was prejudicial." Anderson v. Slayton, 662 S.W.2d 575, 577 (Mo. Ct. App. 1983).

The district court concluded that much of the information in Dr. Bubenik's sole possession would have been relevant to the coverage issue. The state court which decided the Johnston case found that Dr. Bubenik had committed four separate acts of malpractice. One of its findings was that Dr. Bubenik had not performed cardiopulmonary resuscitation (CPR) on Johnston. This finding was directly contradicted by the state dental board document completed by Dr. Bubenik six days after Johnston's procedure, a document which he refused to release to MPC. The state court also found instances of medical malpractice based on the amount of medication administered to Johnston and Dr. Bubenik's decision to perform the dental procedure at his office rather than at a hospital.

The limited medical records available to MPC did not contain explanations for those decisions. Only Dr. Bubenik could have provided that information. Dr. Bubenik's decision not to assist in the preparation of interrogatories, submit to a deposition, or to testify, all impacted the ability of others to testify in his defense. Without his explanations, a potential expert witness could only consider the limited record available to MPC about the circumstances leading to Johnston's death. Even if it were unlikely that Dr. Bubenik's cooperation would have led to a defense verdict, the record supports the district court's conclusion that Dr. Bubenik's noncooperation substantially prejudiced MPC's ability to defend the malpractice claims against him.

The final element MPC must prove is that it exercised reasonable diligence to secure Dr. Bubenik's cooperation. Hayes, 3 S.W.3d at 857. MPC must present evidence to show "what steps it took in order to locate insured and to secure his cooperation in defending the action." Colson v. Lloyd's of London, 435 S.W.2d 42, 45 (Mo. Ct. App. 1968). The record reflects that MPC contacted Dr. Bubenik by telephone and by letter on multiple occasions in an attempt to secure his cooperation.

MPC requested Dr. Bubenik submit to a deposition, answer interrogatories, assist in forming a defense strategy, release state dental board documents, and testify at trial. When its requests went unanswered, MPC provided repeated notice of the doctor's duty to cooperate and the consequences of his failure to do so. The district court found these efforts satisfied the requirement of reasonable diligence, and its conclusion is supported by the evidence.

The Johnstons maintain that even if Dr. Bubenik materially breached the terms of the insurance policy, MPC waived denying coverage or should be estopped from it because the insurer knew in late 2005 that Dr. Bubenik was invoking the Fifth Amendment but continued to defend him without issuing a reservation of rights letter until October 2006.

To show that MPC waived its defense under the cooperation clause, the Johnstons have the burden to prove that MPC intentionally relinquished its rights under that provision. Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384, 386 (Mo. 1989) (en banc). Waiver is a question of fact. Calvert v. Safeco Ins. Co. of Am., 660 S.W.2d 265, 268 (Mo. Ct. App. 1983). If it is "implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right." Smith, 61 S.W.3d at 284.

The district court rejected the Johnstons' waiver argument, finding that they had presented insufficient evidence to support a finding that MPC intended voluntarily to waive its right to deny coverage for noncooperation. MPC's conduct prior to issuing the reservation of rights letter is consistent with the insurer's stated belief that Dr. Bubenik would change his mind and cooperate in defense of the Johnston case. The record reflects multiple communications to Dr. Bubenik during which MPC attempted to persuade him to assist in the preparation and trial of the malpractice claims against him. The district court did not clearly err in finding that MPC had not waived its defense under the cooperation clause.

The Johnstons' estoppel argument also fails. Estoppel requires (1) an admission, statement or act by the party to be estopped inconsistent with the claim afterwards asserted, (2) an action by the other party taken on the faith of such admission, statement, or act, and (3) an injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act. Tinch v. State Farm Ins. Co., 16 S.W.3d 747, 751 (Mo. Ct. App. 2000).

The Johnstons assert that MPC was estopped to deny coverage because it failed to withdraw when the issue of noncooperation first arose. This argument "flies in the face of the duty imposed upon [MPC] to exercise 'reasonable diligence' to secure [Dr. Bubenik's] cooperation." Riffe, 684 S.W.2d at 543. Similar to the argument rejected by the Missouri Court of Appeals in Riffe, the Johnstons' argument ignores the second element of estoppel that "there must be a showing of reliance–that the injured party relied on the conduct of the insurer or was misled by it to his prejudice." Spalding v. Agri-Risk Serv., 855 F.2d 586, 588 (8th Cir. 1988) (quoting Martinelli v. Security Ins. Co., 490 S.W.2d 427, 433 (Mo. Ct. App. 1972)).

The record here discloses that before issuing the reservation of rights letter, MPC had advised Dr. Bubenik on multiple occasions about his duty to cooperate under the policy and the jeopardy to his coverage caused by his noncooperation. MPC informed Dr. Bubenik that "[a]bsent his full cooperation . . . MPC will be forced to choose between election to deny coverage or providing a continued defense only under a full reservation of rights." Although MPC continued to defend Dr. Bubenik despite his persistent noncooperation, it did not take inconsistent positions on the matter. Rather, its continued defense of Dr. Bubenik was in accord with its duty to defend and to attempt to secure his cooperation. The district court did not err by ruling that MPC was not estopped from denying coverage.

For these reasons we affirm the judgment of the district court.

_____