# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1777

_____

Heubel Materials Handling Company, Inc., a Missouri corporation

*Plaintiff - Appellant*

v.

Universal Underwriters Insurance Company, a Kansas corporation

*Defendant - Appellee*

Universal Underwriters Insurance Company, a Kansas corporation

*Third Party Plaintiff - Appellee*

v.

The Raymond Corporation, a New York corporation; Liberty Mutual Insurance Company

*Third Party Defendant*s

_____

No. 12-1951

_____

Heubel Materials Handling Company, Inc., a Missouri corporation

*Plaintiff*

v.

Universal Underwriters Insurance Company, a Kansas corporation

*Defendant*

Universal Underwriters Insurance Company, a Kansas corporation

*Third Party Plaintiff - Appellee*

Liberty Mutual Insurance Company

*Third Party Defendant*

v.

The Raymond Corporation, a New York corporation

*Third Party Defendant* - Appellant

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 14, 2012
Filed: January 30, 2013

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Heubel Materials Handling Company, Inc. ("Heubel") and the Raymond Corporation ("Raymond") appeal the order of the district court[1] granting summary judgment in favor of Universal Underwriters Insurance Company ("Universal") on

_____

[1]The Honorable David Gregory Kays, United States District Judge for the Western District of Missouri.

Heubel's claim for coverage under a Universal insurance policy. The district court held that Heubel's breach of a cooperation clause in the Universal policy absolved Universal of the duty to defend or provide coverage for a products liability lawsuit against Heubel. For the reasons discussed below, we affirm.

## I. Background

Heubel is an authorized dealer of Raymond materials handling equipment (such as forklifts). Heubel participates in the Raymond Dealer Defense and Indemnification Program, which is mandatory for all Raymond dealers. The purpose of the program is to "maintain a product liability and loss prevention defense and indemnification program" and to "provide for a uniform defense" of product liability lawsuits. The program provides:

> In the event a personal injury suit is filed against a Raymond Dealership arising from an alleged Raymond product failure . . . Raymond or its insurance carrier will pay legal costs incurred in the defense of such suit and, except for property damages, will indemnify the Dealership, to the fullest extent allowed by law, in the event of a settlement or adverse judgment, up to the limit of existing coverage.

The dealers contribute to the funding of the program by paying a two-percent surcharge on Raymond parts. This money is not held separately, but goes directly into Raymond's general funds, out of which general funds Raymond pays for an insurance policy from Liberty Mutual to cover its obligations under the Raymond indemnification program. The program requires dealers to "[f]ully cooperate with Raymond and its Defense Counsel with investigations and defense of claims." It also states that dealers "should maintain business insurance coverage as deemed appropriate."

Heubel later obtained a separate general liability insurance policy from Universal. The Universal policy gives Universal the right and duty to defend any suit for covered damages and requires the insured to "cooperate and assist [Universal] in the investigation, settlement, defense, enforcement of contribution or indemnification."

In August 2007, William Harris was severely injured while operating a Raymond "walkie-rider" forklift that had been serviced by Heubel. Harris filed a personal injury suit in the District of Kansas alleging that Heubel failed to properly service the forklift. *See Harris v. Heubel Material Handling, Inc.*, No. 6:09-cv-01136 (D. Kan.). He did not name Raymond as a defendant. Heubel gave immediate notice to Raymond after the accident, and Raymond paid for and controlled the defense of the underlying suit from the outset.[2]

In contrast, Heubel did not give notice to Universal until more than six months after the underlying lawsuit was filed. Universal initially agreed to defend Heubel, subject to a full reservation of rights based on Heubel's late notice, and asked Heubel to identify any other relevant insurance policies. In response to the reservation of rights, Heubel sued in Missouri state court for a declaratory judgment that, under Missouri law, the insurer's reservation of rights entitled Heubel to choose its own counsel and control the defense of the underlying suit.

Universal removed the declaratory judgment action to federal court, withdrew its reservation of rights, and offered to retain counsel to defend Heubel going forward and to reimburse Heubel for interim defense costs incurred after the notice date. However, Universal also informed Heubel that Universal would require Heubel to

---

[2]At the time Heubel and Raymond entered into the Raymond indemnification program, Raymond owned a minority interest in Heubel, but shortly after the accident that led to the *Harris* suit, Raymond obtained an 83.3 percent ownership interest in Heubel through an intermediate subsidiary.

cooperate in pursuing indemnification from Raymond. Heubel responded by amending its complaint to seek a declaratory judgment that "Universal's requirement that Heubel pursue and enforce indemnity [against Raymond] creates a potential or actual conflict of interest between Universal and Heubel," which again would entitle Heubel to select its own counsel and control the defense of the underlying suit. Heubel also added claims for breach of the insurance contract.

Universal counterclaimed for a declaratory judgment that Heubel's lack of cooperation absolved Universal of any duty to provide coverage. Universal also filed third-party complaints against Raymond and Liberty Mutual, seeking a declaratory judgment that, to the extent Universal was still bound to honor its policy, any coverage would apply only after all coverage from the Raymond indemnification program was exhausted. On cross motions for summary judgment, the district court held that Heubel had breached the cooperation clause of the Universal policy; that the breach was not excused by a conflict of interest or reservation of rights; and that the lack of cooperation substantially prejudiced Universal, absolving it of the duty to defend or provide coverage for the underlying suit. Based on the holding of no coverage, the district court did not reach the issue of whether Universal's coverage would be secondary to the Raymond indemnification program.

Heubel and Raymond now appeal the grant of summary judgment, arguing that (1) Heubel was absolved from performing under the cooperation clause due to a reservation of rights by Universal or, alternatively, a conflict of interest between Universal and Heubel, and (2) even if there was a breach of the cooperation clause, any prejudice to Universal from Heubel's control of the defense in the underlying suit was negated by Universal's contractual inability to pursue an indemnification claim against Raymond.

## II.    Discussion

"We review the grant of summary judgment *de novo*." *Discovery Grp. LLC v. Chapel Dev., LLC*, 574 F.3d 986, 988 (8th Cir. 2009). Where, as here, there are no material facts in dispute, the only question is whether Universal is entitled to judgment as a matter of law. *Id.* The parties agree that Missouri law governs the interpretation of the insurance policies in this diversity action. *See Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 542 (8th Cir. 2012). "If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Id.* (quoting *Eubank v. Kan. City Power & Light Co.*, 626 F.3d 424, 427 (8th Cir. 2010)).

"Cooperation clauses such as the one at issue here are valid and enforceable under Missouri law." *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1051 (8th Cir. 2010). "To deny liability coverage under such a provision, an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation." *Id.* Heubel challenges the first two elements.

### A.    Was Heubel absolved from performing under the cooperation clause due to a reservation of rights by, or a conflict of interest with, Universal?

Under Missouri law, a "reservation of rights" refers to an insurer's offer "to defend its insured but reserve the right to later disclaim coverage." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 88 (Mo. Ct. App. 2005) (per curiam). The insured may reject an insurer's offer to defend with a reservation of rights, and if the insurer refuses to withdraw the reservation of rights, the insured is then free to hire independent counsel to defend the underlying suit and obtain compensation from the insurer if the underlying suit later is held to be covered by the policy. *Id.* While

Universal withdrew its initial, express reservation of rights based on late notice, Heubel nevertheless asserts that Universal again reserved its rights when it refused Heubel's demand to stipulate that Universal would "satisfy any judgment . . . [in the underlying suit] on a primary, non-contributing basis," *see* Heubel's Proposed Stipulation and Order forwarded Feb. 26, 2010, that is, when it refused Heubel's demand to forgo any indemnification claim against Raymond.

Heubel's proposed stipulation asked Universal to disclaim a right expressly recognized in the Universal policy, the right to ask the insured to cooperate in pursuing indemnification from another party. Rather than reserving "the right to later disclaim coverage," *Truck Ins. Exch.*, 162 S.W.3d at 88, Universal offered complete coverage but refused to concede its indemnification claim against Raymond. Because Universal did not reserve the right to disclaim coverage of any damages that might be awarded or legal fees that might be incurred in the underlying suit, its action does not qualify as a reservation of rights.

Heubel and Raymond also argue that a conflict of interest precludes Universal from controlling the defense of the *Harris* suit. In this context, a conflict of interest exists if there is a "substantial risk that [Universal's] lawyer's representation of [Heubel] would be materially and adversely affected because of the lawyer's countervailing interests or duties." *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 736 (Mo. 2004) (quoting Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 10.7 (3d ed. Supp. 2004)). Thus, where an underlying suit presents some circumstance that potentially could reward the insurer for failing to provide a full and vigorous defense to its insured, the insurer cannot be permitted to exercise its right to control the defense in the underlying suit. For example, in *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir. 1981), an underlying suit alleged two alternative theories of recovery, only one of which would be covered by the insurance policy at issue. We held that the insurer could not exercise its right to control the defense because its "counsel . . . would be inclined,

albeit acting in good faith, to bend his efforts, however unconsciously, toward establishing that any recovery [in the underlying suit] would be grounded on the theory . . . which was not covered by the policy." *Id.* at 625 (quoting *U.S. Fid. & Guar. Co. v. Louis A. Roser Co.*, 585 F.2d 932, 938 (8th Cir. 1978)).

Here, Heubel makes no claim that the underlying suit presents any circumstance that would reward Universal for failing to provide a full and vigorous defense to Heubel. In addition, there would be no benefit to Universal from a defense strategy of shifting the blame to a product defect attributable to Raymond because the underlying suit alleges precisely that Heubel failed to diagnose or correct such a defect. Heubel and Raymond fail to explain how the defense of the underlying suit could be managed in a way that unfairly minimizes the risk exposure faced by Universal at the expense of increasing the risk exposure faced by Heubel and Raymond.

Instead, the sole conflict of interest asserted by Heubel is that Universal's enforcement of the cooperation clause in the Universal policy would force Heubel to breach the competing cooperation clause in the Raymond indemnification agreement, depriving Raymond of its competing right to control the defense.[3] Thus, Heubel and

---

[3]In their reply brief, Heubel and Raymond also argue for the first time that they, as affiliated companies, should be treated as a single client of any counsel who controls the defense of the *Harris* suit. We generally do not consider arguments not raised in a party's opening brief, and we correspondingly grant Universal's motion to strike the relevant portion of the reply brief. *See Bearden v. Lemon*, 475 F.3d 926, 930 (8th Cir. 2007). Even if we were to consider this argument, we think it is likely that the Supreme Court of Missouri would reject Heubel and Raymond's invitation to ignore their separate corporate forms in these circumstances. Missouri follows the general rule that, while the separate corporate forms of a subsidiary and parent may be disregarded (or "pierced") in appropriate circumstances for the benefit of a third party, those separate corporate forms never should be disregarded for the benefit of the related corporations as against a third party. *See In re Mar-Kay Plastics, Inc.*, 234

Raymond take the position that the Universal policy provides primary coverage for the *Harris* suit and yet, at the same time, the Raymond indemnification program provides primary control of the defense to Raymond. This is antithetical to the traditional principle that conflicting right-to-control clauses should be resolved in favor of the insurer with primary coverage. *See, e.g.*, *Dodge v. Firemen's Fund Ins. Co.*, 362 S.W.2d 767, 769 (Mo. Ct. App. 1962) ("It would be unjust to [the insurer] to declare it has the duty to defend and the obligation to pay the judgments, if obtained, and still to permit [another insurer] to participate in the control of the defense."). Nothing in the plain language of the Universal policy suggests that the parties intended such a non-traditional arrangement. If Heubel and Raymond wished to obtain outside primary products liability insurance coverage while preserving the right of Raymond to control the defense of such a suit, Heubel should have bargained for (and Raymond's indemnification program should have required) an insurance policy that did not give the insurer the right to control the defense.

Because no reservation of rights or conflict of interest entitled Heubel to select its own counsel while continuing to enjoy the coverage benefits of the Universal policy, Heubel breached the policy by refusing to allow Universal to control the defense.

---

B.R. 473, 481 (Bankr. W.D. Mo. 1999); *Cent. Cooling & Supply Co. v. Dir. of Revenue, State of Missouri*, 648 S.W.2d 546, 547 (Mo. 1982) ("[T]he court [has] ignored separate corporate entities . . . to impose liability on the corporation, not to bestow an advantage [on the corporation] . . . .").

**B.    Was any prejudice to Universal from Heubel's control of the defense in the underlying suit negated by Universal's contractual inability to pursue an indemnification claim against Raymond?**

The district court held that the denial of Universal's right to control the defense caused substantial prejudice to Universal, justifying a denial of coverage based on Heubel's breach of the cooperation clause, because it prevented Universal from pursuing a third-party indemnification claim against Raymond in conjunction with the underlying suit.  As a result of Universal's inability to control the defense, it has been deprived of its ability under Federal Rule of Civil Procedure 14 "to implead another party 'who is or may be liable' to the defendant for all or part of the plaintiff's claim." *Discovery Grp.*, 574 F.3d at 989 n.* (quoting Fed. R. Civ. P. 14). Other courts have recognized that third-party practice under Rule 14 enables a party to avoid "[t]he costs and pitfalls associated with litigating multiple suits on the same subject matter, and the attendant possibility of inconsistent verdicts," which "are not insubstantial or abstract." *Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008).  If Universal were allowed to control the defense and implead Raymond, it could "avoid[] having to re-litigate in another court the issues heard and adjudged in the action between itself and" the plaintiff and "protect itself from potentially inconsistent verdicts."  *Id.*

Heubel and Raymond counter that these harms are too speculative to constitute "substantial prejudice" under Missouri law.  They cite *Anderson v. Slayton*, 662 S.W.2d 575 (Mo. Ct. App. 1983), for the proposition that Universal must demonstrate the breach of the cooperation clause "actually was prejudicial to the interests of the insurer" during the underlying litigation. *Id.* at 577.  Tellingly, however, the court in *Anderson* itself rejected "actual prejudice" as a general rule, holding instead that "prejudice automatically follows from the denial to the insurer of any opportunity to defend against the claim." *Id.* at 577-78.  Although the prejudice here is not as extreme as that in *Anderson*, which involved liability for a default judgment entered

-10-

against the insured after it failed to provide notice of suit to the insurer, Universal similarly was denied an opportunity to control the defense of a claim. As a result, we predict that, under these circumstances, the Supreme Court of Missouri would not require Universal to present evidence to show that its interests were "actually" prejudiced during the underlying litigation.

Heubel and Raymond also contend that, even if Universal had been allowed to control the defense of the *Harris* suit, Universal would have been precluded from pursuing an indemnification claim against Raymond because (1) a subrogation waiver clause in the Universal policy allows Heubel to veto any indemnification claim by Universal, and (2) the Raymond indemnification program is not an enforceable indemnity agreement.

### 1.    *Subrogation waiver*

The Universal policy clause entitled "Subrogation" states, "Once WE have made a payment under this policy, . . . [your] rights to recover from others become OUR rights. However, WE will not exercise OUR right of subrogation if YOU ask US not to." According to Heubel and Raymond, even if Universal controlled the defense, Universal would not be allowed to pursue its desired third-party claim against Raymond because Heubel has the right to instruct Universal not to exercise its right of subrogation against Raymond.

The flaw in this argument is that Universal's third-party claim against Raymond would not necessarily arise under the policy's subrogation provision. "Subrogation arises generally when a first party insurer pays its insured's property loss and, thereby, acquires its insured's right to pursue any third party who may have occasioned loss." *Benton House, LLC v. Cook & Younts Ins., Inc.*, 249 S.W.3d 878, 882 (Mo. Ct. App. 2008). On the other hand, "[i]ndemnity is a right which inures to a person who has discharged a duty which is owed by him, but which, as between

himself and another, should have been discharged by the other." *State ex rel. Manchester Ins. & Indem. Co. v. Moss*, 522 S.W.2d 772, 774 (Mo. 1975). Here, Universal premises its claim against Raymond not on a subrogation-type theory that a Raymond manufacturing or design defect "occasioned loss" for Heubel, but rather on the indemnification-type theory that the Raymond indemnification program gave Raymond the primary duty to cover Heubel's damages for such a claim, regardless of causation.

Of course, parties sometimes use the terms "subrogation" and "indemnification" in ways that vary from the traditional understandings of these terms. In determining the effect of subrogation waiver clauses upon indemnification provisions, the court must "rely on the plain and ordinary meaning of the words in the contract and 'consider the document as a whole.'" *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 825 (Mo. Ct. App. 2004) (quoting *SD Invs., Inc. v. Michael–Paul, L.L.C.*, 90 S.W.3d 75, 81 (Mo. Ct. App. 2002)). "It is preferable to attribute a reasonable meaning to each clause and harmonize all provisions, rather than leave some provisions non-functional or nonsensical." *Id.* at 827.

Here, the plain language of the Universal policy treats indemnification and subrogation in the traditional sense of separate potential claims against third parties. For example, the policy recognizes that any right to subrogation occurs solely "[o]nce WE have made a payment under this policy," but it references the insured's duty "to cooperate and assist US in the . . . enforcement of . . . indemnification" in a separate clause entitled "Insured's Duties *after Injury, . . . Occurrence, Claim or Suit*" (emphasis added). Thus, the policy recognizes the traditional broad right of subrogation that arises after the insurer makes payment as well as the express ability to enforce an *indemnification* claim immediately after the injury occurs, which is possible only in the narrower case where another party has a preexisting duty to cover the claim—the traditional meaning of indemnification. In contrast to the subrogation

-12-

clause, there is no provision for the insured to request that Universal not pursue indemnification. Because the plain language of the policy distinguishes between subrogation claims and indemnification claims, we hold that the subrogation clause, including the waiver, is inapplicable to indemnification claims. Thus, Heubel had no grounds under the policy to negate or waive Universal's right to seek indemnification from Raymond.

2. *Enforceability of the Raymond indemnification program*

Next, Heubel and Raymond argue that the Raymond indemnification program's coverage of suits "arising from an alleged Raymond product failure" does not expressly cover the case where the alleged failure results from the dealer's own negligence. "As a general proposition, . . . contractual provisions releasing a party from liability for its own negligent acts must be stated clearly, unequivocally, and conspicuously." *Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc.*, 163 S.W.3d 910, 913 (Mo. 2005). Nevertheless, a sophisticated commercial entity, such as Raymond, may agree to indemnify another party for its own negligence "without specifically mentioning 'negligence,' 'fault,' or an equivalent." *Id.* at 914 (quoting *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59 S.W.3d 505, 509 (Mo. 2001)). In such cases, the operative language to indemnify a party for its own negligence typically includes broad phrases such as "any and all claims," *id.* at 911, or "any damages or expenses claimed," *Purcell*, 59 S.W.3d at 508.

In this case, the Raymond indemnification program does not refer to "any" or "all" claims. This is not surprising, however, because the program is tailored to cover solely product liability claims, not all forms of liability. The program contains other express language that indicates Raymond intended to indemnify Heubel for product failures even when caused by Heubel's own negligence. For example, Raymond promises, as part of its "risk control" under the indemnification program, to instruct "key [Heubel] service personnel, through the Raymond Training Center, as to the

proper and safe repair of Raymond equipment." By definition, repairs and service performed by Heubel would not create a "risk" to Raymond if negligence in such work was not subject to indemnification under the agreement. Furthermore, there would be no reason for dealers to contribute to the funding of the program if they received coverage only for damages caused by Raymond's fault—for which they would be entitled to contribution in any event—and no coverage for damages caused by their own fault. Thus, the plain language of the Raymond indemnification program expresses an intent for Raymond to indemnify Heubel even for Heubel's own negligence in sufficiently clear and unequivocal terms to be effective as to a sophisticated business entity such as Raymond.

In addition, Heubel and Raymond contend that the Raymond indemnification program actually constitutes an insurance purchasing group, rather than an indemnification agreement. An insurance "purchasing group" is a group of businesses with similar or related liability exposure formed to purchase liability insurance on a group basis. 15 U.S.C. § 3901(a)(5)*; see Swanco Ins. Co.-Ariz. v. Hager*, 879 F.2d 353, 354 (8th Cir. 1989). However, the Raymond indemnification program never indicates that Raymond and its dealers are forming a group to purchase liability insurance. Instead, the program states that its purpose is to "provide defense, indemnity and insurance in amounts *to be determined by Raymond*" and that "*Raymond* or *its* insurance carrier . . . will indemnify the Dealership to the fullest extent allowed by law" (emphases added). It is undisputed that Raymond itself, rather than a group, purchased the Liberty Mutual policy out of Raymond's general fund. The fact that the program requires dealers to contribute to Raymond's general fund to help fund the indemnification coverage does not convert Raymond's program for indemnifying its dealers into an insurance purchasing group.

Because nothing in the Universal policy or the Raymond indemnification program precluded a third-party indemnification claim by Universal against Raymond in the *Harris* suit, Universal suffered substantial prejudice from Heubel's refusal to

-14-

allow Universal to control the defense. As a result, Universal was justified in denying coverage based on Heubel's breach of the cooperation clause.

## III.    Conclusion

For the foregoing reasons, we affirm the grant of summary judgment to Universal.

_____