# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1768
_____

Mary L. McClune

*Plaintiff - Appellant*

v.

Farmers Insurance Company, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 13, 2021
Filed: September 10, 2021
_____

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Mary McClune suffered a right shoulder injury after being hit by a car. While recuperating from the injury, McClune injured her left shoulder from overuse. After settling with the liability carrier, McClune filed an Underinsured Motorist ("UIM") claim with her insurer, Farmers Insurance Company ("Farmers"). Farmers conducted an initial evaluation and made a settlement offer that was rejected by McClune when

she presented a significantly higher counteroffer. In response to the counteroffer, Farmers continued its investigation by requesting updated medical documents and informing McClune that she needed to submit to an examination under oath ("EUO"). McClune refused and filed suit six days later. Farmers moved for summary judgment, asserting McClune had breached the policy's cooperation clause. The district court[1] granted Farmers' motion. McClune appeals, and we affirm.

## I.      BACKGROUND

On August 16, 2014, McClune injured her right shoulder when she was hit by a car in a parking lot. McClune made a claim against the driver's insurer, State Farm, that was settled (with Farmers' consent) for the $100,000 bodily injury limit. McClune's policy provided Medical ("med pay") coverage of $5,000 and UIM coverage of $500,000. McClune submitted a med pay claim against Farmers that was paid to the $5,000 policy limit. McClune also made a UIM claim against Farmers, submitting an initial settlement demand of $400,000 in June 2016. She provided Farmers with copies of her medical records and bills supporting her claim.

Farmers assigned Claims Representative Ken Kyle to investigate and adjust McClune's UIM claim. On July 5, 2016, Kyle sent a letter to McClune stating that Farmers had "finalized [its] evaluation" of McClune's UIM claim and made a $2,500 offer to settle the claim. McClune delayed responding to the offer, later explaining the delay was due to increasing problems with her left shoulder. On May 24, 2017, Dr. Jeffrey MacMillan opined that McClune had torn her left rotator cuff from overuse while her right shoulder was injured. He attributed the left shoulder problems to the automobile accident.

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

On July 11, 2017, more than a year after Farmers' original offer, McClune rejected Farmers' July 5, 2016, offer and notified them of her left shoulder injury. She also presented a $500,000 settlement demand to resolve the now enhanced UIM claim. At the end of July 2017, Kyle reopened the investigation and asked McClune to provide the following documents: a June 25, 2015, MRI report and associated bill; a bill for an August 24, 2016, MRI; all of her primary care physician's treatment records "to confirm the shoulder problems did not predate the [August 16, 2014] accident;" and Dr. MacMillan's report. McClune responded the same day indicating she would provide the documents, but it would take 3-4 weeks to obtain them from her providers.

McClune finally provided Farmers the records it had requested on Friday, October 20, 2017. Kyle confirmed receipt of the materials the following Monday. On November 7, 2017, Kyle sent McClune a letter stating that Farmers had "completed [its] evaluation" of her UIM claim as to both shoulder injuries and made a settlement offer of $6,850.

After more than three months without a response, Kyle followed up seeking a response from McClune. Kyle also asked for any new medical records related to any treatment that had occurred since their last correspondence. On March 12, 2018, McClune made a vanishing offer to Farmers stating she was willing to accept $450,000 in full settlement of all claims but the offer would expire on March 28, 2018. Two days later, Kyle informed McClune that he was unable to either accept or reject her offer at that time and that the matter was being referred to counsel.

On April 17, 2018, Farmers' counsel emailed McClune, informing her that its investigation of her UIM claim and $450,000 settlement demand was ongoing. Counsel requested all medical records associated with her injuries "to the extent not previously provided." The letter requested documentation for the June 25, 2015, MRI, which Farmers believed they did not possess; asked McClune to execute

updated medical authorizations; and informed McClune that, once it obtained all of her medical records and had them reviewed by an expert, it would schedule an EUO of McClune.

Six days later, McClune responded to Farmers' requests by commencing an action in the Circuit Court for Jackson County, Missouri. Farmers removed the case to federal court. The parties cross-moved for summary judgment and the court granted Farmers' motion and denied McClune's motion, finding that McClune failed to comply with the cooperation clause in her policy. McClune appeals.

## II. DISCUSSION

This court reviews a grant of summary judgment applying a *de novo* standard of review. Gardner v. Wal-Mart Stores, Inc., 2 F.4th 745, 747 (8th Cir. 2021). Summary judgment is appropriate where there is no genuine dispute of material fact and a reasonable fact finder could not find in favor of the nonmoving party as a matter of law. See Fed. R. Civ. P. 56(a).

The parties agree that Missouri substantive law governs this diversity action. See Heubel Materials Handling Co. v. Universal Underwriters Ins. Co., 704 F.3d 558, 563 (8th Cir. 2013) (applying Missouri law to the interpretation of insurance policies in a diversity action). "If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." Id. (quoting Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012)).

Cooperation clauses are valid and enforceable in Missouri. Hendrix v. Jones, 580 S.W.2d 740, 742 (Mo. 1979). "Missouri courts have consistently acknowledged an insurer's right to a complete investigation of a claim, including examinations, and

have found that the insured's failure to assist in the investigation precludes any coverage." Roller v. Am. Modern Home Ins. Co., 484 S.W.3d 110, 116 (Mo. Ct. App. 2015). To deny coverage, "an insurer must prove: (1) a material breach of the cooperation clause; (2) the existence of substantial prejudice as a result of the breach; and (3) the exercise of reasonable diligence to secure the insured's cooperation." Med. Protective Co. v. Bubenik, 594 F.3d 1047, 1051 (8th Cir. 2010).

## A. Material Breach

McClune's policy imposed a duty to cooperate with Farmers when seeking coverage. In relevant part, the policy requires an insured to (1) authorize Farmers to obtain medical and other records, (2) provide any requested written proofs of loss, and (3) submit to an EUO upon Farmers' request. While the parties dispute whether McClune's medical records authorization was still operable and whether McClune provided all of the documents that Farmers had requested, it is undisputed that on April 17, 2018, Farmers requested that McClune participate in an EUO. Rather than comply with the EUO request, McClune filed this action. By commencing suit and failing to submit to the EUO, McClune materially breached the cooperation clause. See Roller, 484 S.W.3d at 117–18 (failure to submit to an EUO constituted a breach of the cooperation clause); see also Wiles v. Capitol Indem. Corp., 215 F. Supp. 2d 1029, 1031–32 (E.D. Mo. 2001) (same).

While McClune contends her obligation to comply with the cooperation clause ended when Farmers represented it had completed its initial evaluation of her claim on November 7, 2017, McClune's contention ignores a good deal of the parties' ongoing correspondence and the terms of the policy. McClune's policy provides that "[a] person claiming any coverage of this policy must . . . [s]ubmit to examination under oath upon our request." Nothing in the language of the policy draws a distinction between an initial investigation or a reopened investigation. In addition, after she made her March 12, 2018, settlement offer, Farmers promptly informed

-5-

McClune that its investigation of her claim was still ongoing. McClune has cited nothing in either her policy or Missouri law supporting her claim that her duty to cooperate was extinguished under these circumstances.

McClune also argues that she was excused from her duty to cooperate because Farmers first breached the policy, which excused her further performance, and her settlement offer expired. McClune did not raise the first argument in her summary judgment briefing and has waived it.[2] See Sanzone v. Mercy Health, 954 F.3d 1031, 1045 (8th Cir. 2020) (noting that arguments not presented to the district court will not be considered on appeal (citation omitted)). McClune's second argument lacks cogency. A vanishing settlement offer cannot modify a cooperation clause in an insurance policy because mutual assent is a fundamental requirement of contract formation or amendment. See Chaganti & Assocs. v. Nowotny, 470 F.3d 1215, 1221 (8th Cir. 2006). If an insured could unilaterally terminate a provision of the policy by making a vanishing settlement offer, the entire duty to cooperate would be rendered illusory by allowing a claimant to avoid the duty by imposing an arbitrary deadline.

Finally, McClune argues that Farmers waived its right to request an EUO, or is otherwise barred by estoppel. For waiver, McClune has "the burden to prove that [Farmers] intentionally relinquished its rights under that provision." Bubenik, 594 F.3d at 1053–54. McClune does not dispute that Farmers never explicitly waived its right to an EUO. Rather, McClune argues that Farmers waived its right by implication—that is, when Farmers sent its November 7, 2017, offer and stated it had completed its investigation, Farmers is bound by its statement of completeness and is barred from asserting its right to an EUO. To succeed under Missouri law on her implied waiver claim, "the conduct must clearly and unequivocally show a purpose

---

[2]While McClune contends she preserved the argument by raising it in her April 24, 2018, letter to Farmers, making an argument in a letter to an opposing party is not sufficient to preserve an argument for appeal.

to relinquish the right." Id. at 1054 (quoting Smith v. Progressive Cas. Ins. Co., 61 S.W.3d 280, 284 (Mo. Ct. App. 2001)). The evidence does not support her claim. In the November 7 letter, Farmers stated that it completed its review, offered to settle McClune's claim, and asked her counsel to reach out once he had an opportunity to discuss the offer with her. While an inference might be drawn from the letter that Farmers did not intend to have McClune submit to an EUO if she accepted Farmers' offer, nothing in the letter "clearly and unequivocally" relinquished that right in the event the offer was rejected.

McClune's reliance on Calvert v. Safeco Ins. Co. of Am., 660 S.W.2d 265 (Mo. Ct. App. 1983) is unavailing. In Calvert, the insurer extended the investigation period and requested additional sworn statements, which the insureds indicated they were willing to provide. Id. at 268. The insureds also notified the insurer that they intended to file suit as soon as possible. Id. The Missouri Court of Appeals reversed the district court's conclusion that the insurer waived its right to obtain additional sworn statements, in part, because there was conflicting evidence as to waiver, and the appellate court could not determine that the insurer waived its right to the additional statements as a matter of law. Id. at 269.

By contrast, the parties' communications, the basis for McClune's waiver claim, is not in dispute. The only reasonable construction of the communications is that Farmers undertook an initial investigation, reopened its investigation when McClune made an additional settlement demand, informed her that its investigation was ongoing, and, as part of its ongoing investigation, requested that she submit to an EUO. On these facts, Farmers did not clearly and unequivocally relinquish its right to an EUO.

McClune's estoppel argument also fails because there is no evidence that she relied to her detriment on Farmers' initial decision not to conduct an EUO. See Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384, 387 (Mo. 1989) (estoppel

requires that one has been misled to his or her prejudice). McClune argues that she relied on Farmers' initial completion of its review without conducting an EUO in reducing her March 12, 2018, counteroffer to $450,000 (down from the $500,000 she demanded the previous July). Since Farmers did not accept her counteroffer, which expired by its own terms on March 28, 2018, McClune suffered no prejudice in making the counteroffer.

## B.     Prejudice

When McClune failed to submit to the requested EUO, she prevented Farmers from continuing its investigation of her claim. In particular, Farmers did not have an opportunity to fully investigate whether McClune's left shoulder injury pre-dated the accident. An EUO would have provided Farmers with an opportunity to further investigate that question. Her refusal to submit to an EUO prejudiced Farmers. See Roller, 484 S.W.3d at 116 ("Prejudice can be established when the insured fails to comply with a reasonable examination request because the insured has perhaps the greatest knowledge of the circumstances." (cleaned up)).

Although McClune asserts that Farmers can show no prejudice because Farmers necessarily must have had all the information it needed when it said the investigation was complete on November 7, 2017, McClune's assertion fails to account for the parties' subsequent correspondence and continuing investigation. McClune did not respond to Farmers' $6,850 offer until Farmers followed up, asking whether she intended to accept the offer or submit a counteroffer. Farmers also requested any new bills and records for further review. Two weeks later, McClune responded with a letter setting forth the nature of both the original right shoulder injury and the left shoulder injury and demanding $450,000 to settle the claim. Farmers responded, within two days, saying it was neither accepting nor rejecting the claim and was referring the claim to counsel for assistance in "evaluating and

responding to the demand." Farmers' counsel followed up, noting the investigation of her claim was still "ongoing" and requesting an EUO.

While Farmers did represent that it had completed its review to settle a claim that it believed was worth $106,850, when McClune demanded $400,000 more than Farmers' offer, it quite naturally determined that it needed additional information to evaluate her settlement demand. Despite Farmers' representation in November 2017, it is neither unexpected nor unreasonable for an insurer, given the substantial difference between Farmers' offer and McClune's responsive demand, to require further investigation. Farmers specifically informed McClune that it had decided to undertake further investigation in response to her demand. When McClune refused to submit to an EUO as part of Farmers' investigation of a claim that Farmers believed was worth significantly less than what she believed it was worth, she denied Farmers an opportunity to gather that additional information and further investigate her claim and counteroffer.

## C.    Diligence

Finally, the record demonstrates that Farmers was reasonably diligent in its decision to require McClune's participation at an EUO. Farmers requested McClune's EUO about a month after receiving her March 12, 2018, counteroffer. Given the disparity between her counteroffer and Farmers' offer, Farmers' determination that it needed additional information at that point was not unreasonable (nor was the one-month delay between the March 12 counteroffer and Farmers' April 17 request for the EUO). Even if Farmers should have realized it needed an EUO before it sent its November 7, 2017, offer, most of the delay between November 7 and Farmers' April 17 request for the EUO is attributable to McClune, who failed to respond to Farmers' November 7, 2017, offer until March 12, 2018, and then only after being prompted by Farmers. Had McClune acted more promptly, Farmers likely would have requested the EUO earlier.

Underlying McClune's case is her contention that Farmers' decision to reopen the investigation and request an EUO was a delay tactic. If true, the argument would suggest that: (1) Farmers' request for an EUO was not made in good faith; (2) McClune's failure to submit to the requested EUO did not prejudice Farmers because it did not actually need the information; and/or (3) Farmers did not act diligently. McClune's theory, however, is belied by the record. As noted earlier, most of the delay in resolving McClune's two-shoulder claim is attributable to her. She took over a year to respond to Farmers' July 5, 2016, offer. Only on July 11, 2017, did she notify Farmers of her left shoulder injury, provide some documentation, and increase her demand to $500,000. Farmers responded within approximately two weeks by requesting additional records. It took McClune almost three months to provide those records. Farmers made an offer about two weeks later, but McClune once again failed to respond for over four months, acting only when prompted by Farmers. There are insufficient facts from which a fact finder could conclude that Farmers acted unreasonably in investigating and processing her claim or that its request for an EUO was a delay tactic.

## III. CONCLUSION

Based on the evidence in the record, we conclude that McClune's failure to submit to an EUO was a material breach of the cooperation clause that prejudiced Farmers, and that Farmers was reasonably diligent in investigating and processing her claim. Farmers had the right to deny McClune's claim under the terms of the policy and Missouri law. We affirm the judgment of the district court.

_____